**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **CHRIS WILSON D/B/A** | § | |
| **MR. WILSON PLUMBING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | **Civil Action No. 5:15-CV-00201-C** |
| **UNION INSURANCE COMPANY,** | § | |
| **SUSAN COOPER, EAGLE** | § | |
| **ADJUSTING SERVICES, INC., AND** | § | |
| **CAM FANNIN INSURANCE** | § | |
| **AGENCY, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S MOTION TO ABSTAIN AND REMAND

**TO THE HONORABLE UNITED STATES DISTRICT COURT**:

**COMES NOW**, Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, Movant herein, pursuant to 28 U.S.C. § 1447(c), and files this Motion to Abstain and To Remand this action previously removed from the 237th District Court, Lubbock County, Texas, and states as follows:

### I.
### OVERVIEW

1.     This dispute arises out of an insurance claim filed by Plaintiff for damage to his real property located at 117th 82nd Street, Lubbock, Texas in Lubbock County ("the Property").  On or about June 13, 2014, the Property sustained extensive damage resulting from a severe storm that passed through the Lubbock, Texas, area.  Plaintiff made a claim against his insurance policy ("the Policy"), which was issued by Union Insurance Company ("Union") for the resulting damage to the roof and the interior of the Property.

2.     Plaintiff filed suit against Defendants Union Insurance Company ("Union"), Susan Cooper

("Cooper"), Eagle Adjusting Services, Inc. ("Eagle"), and Cam Fannin Insurance Agency, Inc. ("Cam Fannin") in state court on or about August 25, 2015.[1]

3.      The state court Original Petition alleges various violations of the Texas Trade Deceptive Practices Act and common law fraud against Defendants Cam Fannin, Union, Eagle, and Cooper.

4.      It is undisputed that Plaintiff and Defendant Cam Fannin are both residents of Texas.

5.      On or about September 30, 2015, Defendants removed the case to federal court on the basis of diversity jurisdiction.[2]

6.      Defendant Union Insurance Company claims removal is proper because the amount in controversy exceeds $75,000 and there is complete diversity between Plaintiff and all Defendants.

7.      Defendant Union Insurance Company alleges that although Defendant Cam Fannin is not diverse from Plaintiff, its citizenship should be disregarded because it was improperly joined, and the claims against Cam Fannin are separate and distinct from the claims against the other Defendants.

## II.
## AUTHORITY

8.      28 U.S.C. § 1332(a) confers original jurisdiction on federal district courts for "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between…citizens of different States."   Diversity of citizenship pursuant to section 1332 requires complete diversity.[3]   Essentially, a plaintiff must have a different domicile from each defendant.[4]   For diversity purposes, a corporation is a citizen of the state where it was incorporated and the state where it has its principal place of business.[5]

---

[1] See Plaintiff's Original Petition.
[2] See Defendant Union Insurance Company's Notice of Removal.
[3] See *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).
[4] *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991).
[5] 28 U.S.C. §1332 (c)(1).

9.     Additional defendants may be joined in an action if, with respect to all defendants, the action arises out of the same transaction or occurrence and if there is any question of law or fact common to all the defendants.[6]  Improper joinder occurs when a plaintiff adds a non-diverse party in order to deprive the federal courts of jurisdiction.[7]  To establish improper joinder, a defendant must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant" or show that there is "actual fraud in the pleading of jurisdictional facts."[8]

10.    In order to determine if joinder was improper, the court must decide whether the plaintiff has a reasonable basis for recovery.  In order to do so, "[t]he court may conduct a [Federal Rule of Civil Procedure] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the compliant states a claim under state law against the in-state defendant."[9]  Joinder is usually proper if the complaint is sufficient to overcome a Rule 12(b)(6) motion to dismiss.[10]

11.    The burden of establishing that removal is valid because of improper joinder is high.  "Removal statutes are to be construed strictly against removal and for remand,"[11] and all uncertainties regarding state law are resolved "in favor of the non-removing party."[12]  It is important to note that "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[13]  This authority shows that a plaintiff's state court pleadings must be examined in a highly favorable light.

---

[6] Fed. R. Civ. P. 20(a)(2).
[7] *See Griffs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).
[8] *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).
[9] *Id.* at 573 (internal citations omitted).
[10] *Id.*
[11] *Eastus v. Blue Bell Creameries, L.P.*,
[12] *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 206 (5th Cir. 1983)).
[13] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

**III.**

**DISCUSSION**

12.     Defendant Union Insurance Company contends "the claims against Defendants Union, Cooper, and Eagle arise out of separate and distinct transactions or occurrences.  At least some facts must be relevant to both claims for the claims to arise out of the same transaction or occurrence . . . There are no facts relevant to both sets of claims."[14]

13.     As alleged in Plaintiff's Original Petition, Plaintiff's allegations against Cam Fannin are wholly connected to the claims against Eagle, Union, and Cooper. Plaintiff alleges the following against Cam Fannin and Union in his Original Petition:

> Union or its agent, Cam Fannin Insurance Agency, Inc., sold the Policy, insuring the Property, to Plaintiff.  Union and/or Cam Fannin represented to Plaintiff that the Policy included hail and windstorm damage coverage for Plaintiff's Property. When Plaintiff negotiated his premium amount, Cam Fannin represented that the Policy Plaintiff purchased provided full coverage for hail and wind losses.  Union later represented that the full coverage Policy sold by Cam Fannin did not afford the appropriate protection.  Specifically, the Policy sold by Cam Fannin was not a full coverage Policy, but rather, one with specific exclusions.  Ultimately, based on wrongfully applied provisions in the Policy, Union has refused substantive coverage which includes, but is not limited to, replacement of the roof in a manner that complies with Lubbock County building codes, as well as storm-damaged portions of the interior.[15]

14.     Furthermore, the Policy procured by Cam Fannin ultimately formed the basis on which the other three Defendants, Union, Cooper, and Eagle hinged their denial of Plaintiff's wind and hail claim.  The Policy provision in question states:

> A.  The following is added under the **EXCLUSIONS AND LIMITATIONS Section** of this Coverage Part or Policy:
>
> **Cosmetic Damage to Roof Coverings Caused by Hail**
>
> We do not pay for "cosmetic loss or damage" to the "roof covering" of any building scheduled above if such damage is caused by the peril of hail.

---

[14] See Defendant Union Insurance Company's Notice of Removal.
[15] See Plaintiff's Original Petition.

> We do not have hail damage to that portion of the "roof covering" that will allow the penetration of water or results in the failure of the "roof covering" to perform its intended function to keep out the elements over an extended period of time.

B.   The following are added under **DEFINITIONS**:

> "Cosmetic loss or damage" means damage to any portion of the roof covering of a building that alters only its physical appearance but does not result in the failure of the roof covering to perform its intended function of keeping out the elements over an extended period of time.

> "Roof Covering" means the roofing material exposed to the elements, the underlayments applied for moisture protection, roof doors, roof vents, roof turbines, and all stripping, flashing, and edging required in the replacement of the roofing material or underlayments.[16]

15.   The root of this dispute is the exclusionary language above, which was sold as part of the Policy by Cam Fannin, and ultimately interpreted by Union, Eagle, and Cooper in a manner to deny Plaintiff coverage for wind and hail damage to his roof.  All Defendants have knowledge of the limiting language in Plaintiff's Policy and how that language was interpreted as applied to Plaintiff's denial of coverage.

16.   Specifically, during the purchase of the Policy, Cam Fannin represented that the Policy had full coverage, in spite of the cosmetic damage waiver.  However, after Plaintiff filed a claim for damage, Union, Eagle, and Cooper interpreted the cosmetic damage waiver in a manner that did not afford Plaintiff full coverage.  Defendants have fundamental differences between their interpretation of the cosmetic damage waiver, intertwining Plaintiff's claims against Cam Fannin with his claims against Union, Eagle, and Cooper.

17.   Plaintiff's claims against all Defendants arise out of the same transaction or occurrence.  Therefore, Cam Fannin has not been improperly joined.

18.   Because there is no complete diversity of citizenship between the parties, this cause of

---

[16] See Plaintiff's Certified Commercial Policy of Insurance with Cosmetic Damage Waiver.

action should be remanded back to the original state court.

## IV.
## CONCLUSION

19.     As Cam Fannin was properly joined as a defendant in the above captioned cause, complete

diversity does not exist and this court lacks subject matter jurisdiction.  When a district court

determines that it lacks subject matter jurisdiction over a removed case, the suit must be

"immediately remanded to state court."[17]

**WHEREFORE PREMISES CONSIDERED**, Plaintiff, Chris Wilson d/b/a Mr. Wilson

Plumbing, prays that the Court abstain from hearing this cause of action and remand the same to

the 237th Judicial District Court, Lubbock County, Texas for resolution on the merits, for recovery

of all costs and disbursements, including attorney's fees, incurred by reason of the removal

proceedings, and for such other and further relief to which Plaintiff may justly be entitled.

Respectfully submitted,

CHAD T WILSON LAW FIRM PLLC

By:  */s/ Chad T. Wilson*

Chad T. Wilson
Bar No. 24079587
cwilson@cwilsonlaw.com
Kimberly N. Blum
Bar No. 24092148
kblum@cwilsonlaw.com
1322 Space Park Drive, Suite A–155
Houston, Texas  77058
Telephone: (832) 415-1432
Facsimile: (281) 940-2137

---

[17] *See Avitts v. Amoco Prod. Co.*, 53 F. 3d 690, 693 (5th Cir. 1995).

PROVOST UMPHREY LAW FIRM LLP

David P. Wilson
Bar No. 21672700
Dwilson@provostumphrey.com
490 Park Street, Suite 100
Beaumont, Texas  77701
Telephone: (409) 835-6000
Facsimile: (409) 838-8888

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

This is to certify that on October 28th, 2015, Plaintiff's counsel conferred with Michael Beckelman and Lakeisha Forte Wells in good faith to remand this case back to Lubbock County District Court. However, defense counsel does not agree. Therefore, the matter is presented to the Court for determination.

*/s/ Chad T. Wilson*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Plaintiff's Motion to Abstain and To Remand has been sent to counsel of record by certified U.S. Mail, facsimile, hand delivery, or electronic service on this 30th day of October, 2015.

Matthew E. Ritchie
matt@mritchielaw.com
2449 South Willis, Suite 200
Abilene, Texas 79605
Facsimile: (888) 792-5142

ATTORNEY FOR CAM FANNIN
INSURANCE AGENCY, INC.

Brett W. Schouest
bschouest@dykema.com
Larissa S. Fields
lfields@dykema.com
Rachel Skinner
rskinner@dykema.com
Dykema, Cox, Smith
112 East Pecan, Suite 1800
San Antonio, Texas 78205
Facsimile: (210) 226-8395

ATTORNEYS FOR EAGLE
ADJUSTING SERVICES, INC.

Michael Beckelman
Michael.beckelman@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, Texas 77010
Facsimile: (713) 785-7780
Lakeisha Forte Wells
Lakeisha.fortewells@wilsonelser.com
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202
Facsimile: (214) 698-1101

ATTORNEYS FOR UNION INSURANCE
COMPANY

*/s/ Chad T. Wilson*

8

**EXHIBIT LIST**

1. Plaintiff's Original Petition

2. Defendants' Notice of Removal

3. Plaintiff's Commercial Policy with Cosmetic Damage Waiver

# EXHIBIT A

8/25/2015 3:01:14 PM
Barbara Sucsy
District Clerk
Lubbock County, Texas
**WA**

NO. **2015-517,181**

| | | |
|---|---|---|
| CHRIS WILSON | § | IN THE DISTRICT COURT OF |
| d/b/a MR. WILSON PLUMBING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| UNION INSURANCE COMPANY, | § | LUBBOCK COUNTY, TEXAS |
| SUSAN COOPER, | § | |
| EAGLE ADJUSTING SERVICES, INC., | § | |
| AND CAM FANNIN INSURANCE | § | |
| AGENCY, INC., | § | |
| | § | |
| Defendants. | § | **237TH** DISTRICT COURT |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Chris Wilson d/b/a Mr. Wilson Plumbing ("Plaintiff"), and files **Plaintiff's Original Petition, Jury Demand, and Request for Disclosure**, complaining of Union Insurance Company ("Union"), Susan Cooper ("Cooper"), Eagle Adjusting Services, Inc. ("Eagle"), and Cam Fannin Insurance Agency, Inc. ("Cam Fannin") (or collectively "Defendants"), and for cause of action, Plaintiff respectfully shows the following:

### DISCOVERY CONTROL PLAN

1.    Plaintiff intends to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4 and 169.

### PARTIES

2.    Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, resides in Lubbock County, Texas, and owns the property located at 117 82nd Street, Lubbock, Texas, 79404.

3.      Defendant Union Insurance Company, is a Texas insurance company, engaged in the business of insurance in the State of Texas.  Plaintiff requests service of citation upon Union Insurance Company through its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.  Plaintiff requests service at this time.

4.      Defendant Cooper is an Adjuster in the course and working scope of employment with Union Insurance Company.  Cooper may be served with process at the following address: **815 Wheatfields Road, Globe, Arizona 85501**.  Plaintiff requests service at this time.

5.      Defendant Eagle is a third party adjusting company in the course and working scope of employment with Union Insurance Company.  Eagle may be served with process at the following address: **14701 Cumberland Road #300, Noblesville, Indiana 46060-4374**. Plaintiff requests service at this time.

6.      Cam Fannin Insurance Agency, Inc. is a general lines insurance agency that sells property, casualty, life, accident, and HMO insurance to consumers in the State of Texas.  Cam Fannin may be served with process, care of Stephen G. Fannin, at the following address: **1810 50th Street, Lubbock, Texas 79412-2704**.

### JURISDICTION

7.      The Court has jurisdiction over Union because Union engages in the business of insurance in the State of Texas, and the causes of action arise out of Union's business activities in the State of Texas, with reference to this specific case.

8.      The Court has jurisdiction over Cooper because Cooper engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of her business activities in the State of Texas, with reference to this specific case.

2

9.     The Court has jurisdiction over Eagle because Eagle engages in the business of adjusting

insurance claims in the State of Texas, and the causes of action arise out of its business

activities in the State of Texas, with reference to this specific case.

10.    The Court has jurisdiction over Cam Fannin because Cam Fannin engages in the business

of selling insurance policies in the State of Texas, and the causes of action arise out of its

business activities in the State of Texas, with reference to this specific case.

## VENUE

11.    Venue is proper in Lubbock County, Texas, because the insured property is located in

Lubbock County, Texas, and all or a substantial part of the events giving rise to this lawsuit

occurred in Lubbock County, Texas.  TEX. CIV. PRAC. & REM. CODE § 15.032.

## FACTS

12.    Plaintiff asserts claims for fraud, breach of contract, violations of sections 541 and 542 of

the Texas Insurance Code, and violations of the Texas DTPA.

13.    Plaintiff owns a Union property insurance policy, number CNA 4534974 ("the Policy").

At all relevant times, Plaintiff owned the insured premises located at 117 82nd Street,

Lubbock, Texas, 79404 ("the Property").

14.    Union or its agent, Cam Fannin Insurance Agency, Inc., sold the Policy, insuring the

Property, to Plaintiff.  Union and/or Cam Fannin represented to Plaintiff that the Policy

included hail and windstorm damage coverage for Plaintiff's Property.

15.    When Plaintiff negotiated his premium amount, Cam Fannin represented that the Policy

Plaintiff purchased provided full coverage for hail and wind losses.  Union later represented

that the full coverage Policy sold by Cam Fannin did not afford the appropriate protection.

3

Specifically, the Policy sold by Cam Fannin was not a full coverage Policy, but rather, one with specific exclusions.

16.     Ultimately, based on wrongfully applied provisions in the Policy, Union has refused substantive coverage which includes, but is not limited to, replacement of the roof in a manner that complies with Lubbock County building codes, as well as storm-damaged portions of the interior.

17.     On or about August 28, 2014, the Property sustained extensive damage resulting from a severe storm that passed through the Lubbock, Texas, area.

18.     As a result of the storm, the Property sustained damage to the metal roof, flashing, metal siding on the front, left, right, and rear elevations.

19.     All damaged interior rooms require new insulation and replacement of light and electrical fixtures.

20.     More specifically, the hail and windstorm compromised the integrity of the roof, allowing water to aggressively penetrate the interior.  This is evidenced by numerous pockets of water that have formed along the foam insulation boards of the ceiling, and by the entry of water along the walls of the interior, including the front room, left center room, and the right and left rooms at the rear.

21.     In the aftermath of the wind and hailstorm occurring on or around August 28, 2014, Plaintiff submitted a claim to Union against the Policy for covered damage to the Property. Union assigned claim number 10095013 to Plaintiff's claim.

22.     Plaintiff asked Union to cover damage to the Property pursuant to the Policy.

23.     Union hired or assigned Eagle and Cooper to adjust the claim.

4

24.   After inspecting the Property, Cooper generated an estimate of damages in the amount of $145.51 for repairs to replace damaged roofing components.

25.   Cooper then applied a 92% depreciation rate to Plaintiff's recovery, leaving Plaintiff with $11.52 to replace all damaged roofing components.

26.   After, Cooper authorized a roofing labor minimum charge in the amount of $287.84, for a total recovery of $298.84.

27.   Upon application of Plaintiff's deductible, Plaintiff was left with $0.00 to complete any repairs.

28.   Plaintiff currently estimates that actual damages to the Property under the Policy are $155,845.91.

29.   In correspondence dated October 13, 2014, Union explained to Plaintiff that payment was for "fiberglass skylights [that] sustained hail damage that requires replacement . . . we are now closing our file without further action."

30.   In Defendants' investigation of Plaintiff's claim, Defendants failed to address any of the damage to the Property's metal roof.

31.   In correspondence to Plaintiff's counsel dated April 6, 2015, Union referenced the "Cosmetic Damage to Roof Coverings Caused by Hail" from the Exclusions and Limitations Section of Plaintiff's Policy, which reads:

> We do not pay for "cosmetic loss or damage" to the "roof covering of any building scheduled above if such damage is caused by peril of hail.
>
> We do cover hail damage to that portion of the "roof covering" that will allow the penetration of water or results in the failure of the "roof covering" to perform its intended function to keep out the elements over an extended period of time.

32.     However, Defendants never explained to Plaintiff how this exclusion specifically applied to Plaintiff's claim, or limited coverage, particularly in light of the fact that Plaintiff's roof has failed to keep out the elements, and has resulted in severe interior water damage.

33.     As detailed herein, Defendants failed to assess damages to Plaintiff's Property in a reasonable manner, even though the Policy provided coverage for wind and hail losses such as those suffered by Plaintiff.

34.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.   TEX. INS. CODE §541.060(a)(1).   Defendants failed to attempt to settle Plaintiff's claim in a fair manner, although Defendants were aware of Union's liability to Plaintiff under the Policy.  Specifically, Defendants failed to, in an honest and fair manner, balance their own interests in maximizing gains and limiting disbursements, with the interest of Plaintiff by failing to timely pay coverage due under the Policy.  Defendants also failed to show that the policy exclusion referenced as "Cosmetic Damage to Roof Coverings Caused by Hail," relied upon for denial of payment for Plaintiff's roof is clear, conspicuous, and applicable.

35.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.   TEX. INS. CODE §541.060(a)(2)(A).   Defendants failed to provide Plaintiff a reasonable explanation for partial denial of the claim, and for not making full payment under the terms of the Policy.   Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming for the entire loss covered under the Policy, nor did they provide any explanation for failing to settle Plaintiff's claim properly. However, Union did state that they would not be taking further action on Plaintiff's claim.

6

36. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4). Union refused to provide any coverage due to Plaintiff under the terms of the Policy. Specifically, Union, through its agents, servants, and representatives, failed to assess damages properly, and performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of losses on the Property.

37. Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055. Defendants failed to reasonably accept or deny Plaintiff's entire claim within the statutorily mandated time after receiving all necessary information.

38. Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056. Defendants failed to meet their obligations under the Texas Insurance Code regarding timely payment of the claim. Specifically, Union has delayed full payment of Plaintiff's claim longer than allowed.

39. Defendants made the false misrepresentations described herein and others to Plaintiff, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Plaintiff relied on Defendants' misrepresentations, including but not limited to those regarding coverage, the cause of, scope of, and cost to repair damage to the Property. Plaintiff's damages are a result of his reliance on misrepresentations regarding coverage, the cause of, scope of, and cost to repair damage to the Property.

40. Defendants' misrepresentations, unreasonable delays, and continued denials constitute a breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance

7

Code.  Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between Union and Plaintiff.

41.     Union failed to perform its contractual duties to Plaintiff under the terms of the Policy. Specifically, Union refused to pay the full proceeds of the Policy, although due demand was made for an amount sufficient to cover the damaged Property, and all conditions precedent to recover upon the Policy have been carried out by Plaintiff.

42.     As described herein, Union, through its agents or representatives, engaged in egregiously poor claims handling practices, and used language in the Policy to wrongfully deny the claim.

43.     Defendants' wrongful acts and omissions forced Plaintiff to retain the professional services of the attorneys and law firms representing him with respect to these causes of action.

## CAUSES OF ACTION AGAINST UNION INSURANCE COMPANY

### BREACH OF CONTRACT

44.     Union is liable to Plaintiff for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.  It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between Union and Plaintiff.

45.     Union's failure and/or refusal to pay adequate compensation as obligated under the terms of the Policy, and under the laws of the State of Texas, constitutes a breach of Union's insurance contract with Plaintiff.

**NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES**

46.    Union's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are actionable by TEX. INS. CODE §541.151.

47.    Union's unfair settlement practice of misrepresenting to Plaintiff material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(1).

48.    Union's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

49.    Union's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for denial of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(3).

50.    Union's unfair settlement practice of refusing to pay Plaintiff's claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

**NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:**
**THE PROMPT PAYMENT OF CLAIMS**

51.   Union's conduct constitutes multiple violations of the Texas Insurance Code, Prompt

Payment of Claims.  All violations made under this article are actionable by

TEX. INS. CODE §542.060.

52.   Union's failure to request from Plaintiff all items, statements, and forms Union reasonably

believed would be required within the applicable time constraints constitutes a non-prompt

payment and a violation of TEX. INS. CODE §542.055.

53.   Union's failure to notify Plaintiff in writing with a reasonable explanation for denying the

claim constitutes a violation of this subsection.  TEX. INS. CODE §542.056.

54.   Union's delay in rendering full payment of Plaintiff's claim following receipt of all items,

statements, and forms reasonably requested and required, for longer than the amount of

time provided, constitutes a non-prompt payment.  TEX. INS. CODE §542.058.

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

55.   Union's conduct constitutes a breach of the common law duty of good faith and fair dealing

owed to an insured in insurance contracts.

56.   Union's failure to adequately and reasonably investigate and evaluate Plaintiff's claim,

although, at that time, Union knew or should have known by the exercise of reasonable

diligence that liability was reasonably clear, constitutes a breach of the duty of good faith

and fair dealing.

**DTPA VIOLATIONS**

57.   Union's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act

("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and

10

services provided by Union pursuant to the DTPA.  Plaintiff has met all conditions precedent to bringing this cause of action against Union.  Specifically, Union's violations of the DTPA include, without limitation, the following matters:

A.      By its acts, omissions, failures, and conduct, Union has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA.  Union's violations include, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiff' claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's Property when liability has become reasonably clear.  This gives Plaintiff the right to recover under section 17.46(b)(2).

B.      Union represented to Plaintiff that the Policy and its adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.      As described herein, Union represented to Plaintiff that the Policy and its adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.      As described above, Union advertised the Policy and its adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.  Specifically, Union wrongfully denied the claim under a "collapse," when the claim should have been covered under wind peril.

E.      Union breached an express warranty that damages caused by wind and hail would be covered under the Policy.  This breach entitles Plaintiff to recover under sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA.

11

F.   Union's actions are unconscionable in that Union took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.   Union's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

G.   Union's conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

58.   Each of Union's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages.   All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally" by Union, as defined by the Texas Deceptive Trade Practices Act.   TEX. BUS. & COM. CODE 17.45.

**FRAUD**

59.   Union is liable to Plaintiff for common law fraud.

60.   Each and every representation described above concerned material facts that absent such representations, Plaintiff would not have acted as he did, and Union knew the representations were false or made recklessly without any knowledge of their truth as a positive assertion.

61.   Union made these statements intending that Plaintiff act upon them.   Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud.

**CAUSES OF ACTION AGAINST DEFENDANT SUSAN COOPER**

**NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:
UNFAIR SETTLEMENT PRACTICES**

62.     Cooper's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act.  TEX. INS. CODE §541.060(a).

63.     Cooper is individually liable for her unfair and deceptive acts, irrespective of the fact that she was acting on behalf of Union, because Cooper is a "person," as defined by TEX. INS. CODE §541.002(2).

64.     Cooper knowingly denied damage to the Property under an invalid policy exclusion.  As such, Cooper failed to adopt and implement reasonable standards for the prompt and reasonable investigation of the claim arising under the Policy.   TEX. INS. CODE §542.003(3).

65.     Furthermore, Cooper did not attempt in good faith to effect a fair, prompt, and equitable settlement of the claim.  TEX. INS. CODE §542.003(4).

66.     Cooper's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice.  TEX. INS. CODE §541.060(a)(3).

67.     Cooper's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though Union's liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

68.   Cooper's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and services provided by Cooper pursuant to the DTPA.  Plaintiff has met all conditions precedent to bringing this cause of action against Cooper.  Specifically, Cooper's violations of the DTPA include, without limitation, the following matters:

A.   By her acts, omissions, failures, and conduct, Cooper has violated sections 17.46(b)(2), (5), and (7) of the DTPA.  Cooper's violations include, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's property when Union's liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.   Cooper represented to Plaintiff that her adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.   Cooper represented to Plaintiff that her adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

F.   Cooper's actions are unconscionable in that Cooper took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.  Cooper's

unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of

the DTPA; and

G.     Cooper's conduct, acts, omissions, and failures are unfair practices in the business

of insurance in violation of section 17.50(a)(4) of the DTPA.

69.     Each of Cooper's above-described acts, omissions, and failures is a producing cause of

Plaintiff's damages.   All of the above-described acts, omissions, and failures were

committed "knowingly" and "intentionally" by Cooper, as defined by the Texas Deceptive

Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

**FRAUD**

70.     Cooper is liable to Plaintiff for common law fraud.

71.     Each and every representation described above concerned material facts that absent such

representations, Plaintiff would not have acted as he did, and Cooper knew the

representations were false or made recklessly without any knowledge of their truth as a

positive assertion.

72.     Cooper made these statements intending that Plaintiff act upon them.  Plaintiff then acted

in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting

common law fraud.

**CAUSES OF ACTION AGAINST DEFENDANT EAGLE ADJUSTING SERVICES, INC.**

**NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES**

73.     Eagle's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim

Settlement Practices Act.  TEX. INS. CODE §541.060(a).

15

74.     Eagle, through its agent, Cooper, knowingly denied damage to the Property under an invalid policy exclusion.   As such, Eagle failed to adopt and implement reasonable standards for the prompt and reasonable investigation of the claim arising under the Policy. TEX. INS. CODE §542.003(3).

75.     Furthermore, Eagle did not attempt in good faith to effect a fair, prompt, and equitable settlement of the claim.   TEX. INS. CODE §542.003(4).

76.     Eagle's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice.   TEX. INS. CODE §541.060(a)(3).

77.     Eagle's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though Union's liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.   TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

78.     Eagle's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.   Plaintiff is a consumer of goods and services provided by Eagle pursuant to the DTPA.   Plaintiff has met all conditions precedent to bringing this cause of action against Eagle.   Specifically, Eagle's violations of the DTPA include, without limitation, the following matters:

A.      By its acts, omissions, failures, and conduct, Eagle has violated sections 17.46(b)(2), (5), and (7) of the DTPA.   Eagle's violations include, (1) unreasonable

16

delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's property when Union's liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.    Eagle represented to Plaintiff that its adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.    Eagle represented to Plaintiff that its adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

F.    Eagle's actions are unconscionable in that Eagle took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.   Eagle's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

G.    Eagle's conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

79.    Each of Eagle's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages.   All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally" by Cooper, as defined by the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

## FRAUD

80.    Eagle is liable to Plaintiff for common law fraud.

81.    Each and every representation described above concerned material facts that absent such representations, Plaintiff would not have acted as he did, and Eagle knew the representations were false or made recklessly without any knowledge of their truth as a positive assertion.

82.    Eagle made these statements intending that Plaintiff act upon them.  Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud.

## CAUSES OF ACTION AGAINST DEFENDANT
## CAM FANNIN INSURANCE AGENCY, INC.

## DTPA VIOLATIONS

83.    Cam Fannin's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.46.  Specifically, its violations of the DTPA include, without limitation, the following matters:

A.    By its acts, omissions, failures, and conduct, Cam Fannin violated sections 17.46(b)(2) and 17.46(b)(5) of the DTPA.  Cam Fannin's violations include causing confusion as to the Policy benefits, and representing that the Policy had benefits or characteristics that it did not possess.

B.    Cam Fannin breached an express warranty during the sale of the Policy that the damages caused by wind and hail would be covered under the Policy, when they were not.  This breach entitles Plaintiff to recover under sections 17.46(b)(12), 17.46(b)(20), and 17.50(a)(2) of the DTPA.

C.     Cam Fannin's conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

D.     Cam Fannin's actions are unconscionable in that Cam Fannin took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Cam Fannin's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

84.     Each of Cam Fannin's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages.  All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally" by Cam Fannin, as defined by the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

**FRAUD**

85.     Cam Fannin is liable to Plaintiff for common law fraud.

86.     Each and every representation described above concerned material facts that absent such representations, Plaintiff would not have acted as he did, and Cam Fannin knew the representations were false or made recklessly without any knowledge of their truth as a positive assertion.

87.     Cam Fannin made these statements intending that Plaintiff act upon them.  Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud.  Specifically, Cam Fannin represented to Plaintiff during the sale of the Policy that the Policy had benefits or characteristics it did not possess.  Plaintiff relied on these statements, and as a result, has suffered damages to his Property.

**KNOWLEDGE**

88.  Defendants made each of the acts described above, together and singularly, "knowingly," as defined in the Texas Insurance Code, and each was a producing cause of Plaintiff's damages described herein.

**WAIVER AND ESTOPPEL**

89.  Defendants waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

**DAMAGES**

90.  The damages caused to the Property have not been properly addressed since the claim was made, causing further damage to the Property, and undue hardship and burden to Plaintiff. These damages are a direct result of Defendants' mishandling of Plaintiff's claim in violation of the laws above.

91.  Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of damages sustained.  Defendants' above described acts, omissions, failures, and conduct have caused Plaintiff's damages, which include, without limitation, the cost to properly repair the Property, and any investigative and engineering fees incurred.

92.  For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of the claim, consequential damages, together with attorney's fees.

93.  Plaintiff currently estimates that actual damages to the Property under the Policy are $155,845.91.

94.     For noncompliance with the DTPA and the Texas Insurance Code, Unfair Settlement

        Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits owed

        pursuant to the Policy, mental anguish, court costs, and attorney's fees.  For knowing and

        intentional conduct, Plaintiff asks for three (3) times the actual damages.

        TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(b)(1).

95.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff

        is entitled to the amount of the claim, plus an eighteen percent (18%) per annum penalty

        on that claim, as damages, as well as pre-judgment interest, and reasonable attorney's fees.

        TEX. INS. CODE §542.060.

96.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to

        compensatory damages, including all forms of loss resulting from Union's breach of duty,

        such as additional costs, economic hardship, losses due to nonpayment of the amount owed,

        exemplary damages, and damages for emotional distress.

97.     Union's breach of the common law duty of good faith and fair dealing was committed

        intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with

        "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies

        Code.  These violations are the type of conduct which the State of Texas protects its citizens

        against by the imposition of exemplary damages.  Therefore, Plaintiff seeks the recovery

        of exemplary damages in an amount determined by the finder of fact sufficient to punish

        Union for its wrongful conduct and to deter others from committing similar acts in the

        future.

98.     For fraud, Plaintiff is entitled to recover actual and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

99.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys subscribed to this pleading.  Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

100.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court.  As required by Rule 47(c)(4) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks only monetary relief of no less than $200,000.00, but no more than $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees. A jury will ultimately determine the monetary relief actually awarded, however.  Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

### REQUESTS FOR DISCLOSURE

101.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiff requests that Defendants disclose, within fifty (50) days from the date this request is served, the information or material described in Rules 190.2(b)(6) and 194.2.

## JURY DEMAND

102.   Plaintiff hereby requests a jury trial for all causes of action alleged herein, tried before a

jury consisting of citizens residing in Lubbock County, Texas.  Plaintiff hereby tenders the

appropriate jury fee.

## PRAYER

Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, prays that Defendants, Union

Insurance Company, Susan Cooper, Eagle Adjusting Services, Inc., and Cam Fannin Insurance

Company, Inc., be cited and served to appear, and that upon trial hereof, Plaintiff, Chris Wilson

d/b/a Mr. Wilson Plumbing, recovers from Defendants such sums as would reasonably and justly

compensate him in accordance with the rules of law and procedure, as to actual, consequential,

and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and

all punitive, additional, and exemplary damages as may be found.  In addition, Plaintiff requests

the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended

on Plaintiff's behalf, for pre-judgment and post-judgment interest as allowed by law, and for any

other and further relief, at law or in equity, to which Plaintiff, Chris Wilson d/b/a Mr. Wilson

Plumbing, may show himself justly entitled to.

Respectfully submitted,

PROVOST UMPHREY LAW FIRM LLP

By: _/s/ David P. Wilson_

David P. Wilson
Bar No. 21672700
DWilson@pulf.com
490 Park Street, Suite 100
Beaumont, Texas 77701
Telephone: (409) 835-6000
Facsimile: (409) 838-8888

CHAD T WILSON LAW FIRM PLLC

Chad T. Wilson
Bar No. 24079587
CWilson@cwilsonlaw.com
Kimberly N. Blum
Bar No. 24092148
KBlum@cwilsonlaw.com
1322 Space Park Drive, Suite A155
Houston, Texas 77058
Telephone: (832) 415-1432
Facsimile: (281) 940-2137

ATTORNEYS FOR PLAINTIFF

# EXHIBIT B



## FACSIMILE

**Bank of America Plaza, 901 Main Street Suite 4800**              Telephone #:    214.698.8000
**Dallas, TX 75202-3758**                                         Facsimile #:    214.698.1101

The following facsimile has 70 page(s) including this cover page.  If you have any difficulty, or if the transmission was incomplete, please advise: (214) 698-8025.

| From: | LaKeisha Forte Wells | Date: | September 30, 2015 |
|---|---|---|---|
| Attorney #: | 7895 | File #: | 9356.253 |
| Re: | *Chris Wilson vs. Union Insurance Company, et al;* | | |

Please deliver as soon as possible to: See below

| Recipient | Company | Fax No. | Phone No. |
|---|---|---|---|
| David Wilson | PROVOST UMPHREY LAW FIRM | 409-838-8888 | |
| Chad T. Wilson, Kimberly Blum | CHAD T. WILSON LAW FIRM PLLC | 281-940-2137 | |
| Brett Schouest, Larissa Fields, Rachel Skinner | DYKEMA GOSSETT PLLC | 210-226-8395 | |
| Matthew E. Ritchie | MATTHEW E. RITCHIE ATTORY AND COUNSELOR | 888-792-5142 | |

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us via postal service. Thank you.

Albany • Baltimore • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Houston • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami • Madison • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Vaquois • Washington D.C. • West Palm Beach • White Plains

10/01/2015 06:24 FAX 2146981101        Wilson Elser                                    ☑002/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 37 of 171  PageID 183
Case 5:15-cv-00201-C  Document 1  Filed 09/30/15  Page 1 of 8  PageID 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | |
|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING | § § § |
| VS. | § § CIVIL ACTION NO. _____ |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC., AND CAM FANNIN INSURANCE AGENCY, INC., | § § § § § |

*Removed From*

### CAUSE NO. 2015-517,181

| | |
|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING | § § § IN THE DISTRICT COURT |
| VS. | § § LUBBOCK COUNTY, TEXAS |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC., AND CAM FANNIN INSURANCE AGENCY, INC., | § § § § 237TH DISTRICT COURT |

## UNION INSURANCE COMPANY'S
## NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THIS COURT:

Please take notice that Union Insurance Company, a defendant in the above-captioned action, hereby notes the removal of this civil action to the United States District Court for the Northern District of Texas, Lubbock Division, from the 237th District Court in Lubbock County, Texas, as provided by 28 U.S.C. §§ 1332, 1441 and 1446. The grounds for removal are more particularly stated as follows:

10/01/2015 06:24 FAX 2146981101        Wilson Elser                    ☑003/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 38 of 171  PageID 184
Case 5:15-cv-00201-C  Document 1  Filed 09/30/15   Page 2 of 8  PageID 2

## I.    PROCEDURAL HISTORY

1.      On August 25, 2015, Chris Wilson d/b/a Mr. Wilson Plumbing filed his Original Petition in Lubbock County, Texas.[1]  In his Original Petition, Plaintiff named four defendants, Union Insurance Company ("Union"), Susan Cooper ("Cooper"), Eagle Adjusting Services, Inc., ("Eagle") and Cam Fannin Insurance Agency, Inc.  ("Cam Fannin").[2]

2.      Defendant Union was served with Plaintiff's Original Petition on August 31, 2015.

3.      Defendant Cooper has not yet been served with Plaintiff's Original Petition.

4.      Defendant Eagle was served with Plaintiff's Original Petition on or about September 2, 2015.

5.      Defendant Cam Fannin was served with Plaintiff's Original Petition on September 2, 2015.

## II.    TIMING

6.      This Notice of Removal is filed within thirty (30) days of receipt of the first service of the Original Petition on Union, and is therefore timely filed under 28 U.S.C. §1446(b).

## III.    DIVERSITY

7.      Plaintiff's Original Petition establishes that the United States District Court for the Northern District of Texas, Lubbock Division, has jurisdiction by reason of the diversity of citizenship of the parties.

---

[1] Pl. Original Pet.
[2] Id.

10/01/2015 08:25 FAX 2146981101          Wilson Elser                                    ☑004/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 39 of 171  PageID 185
Case 5:15-cv-00201-C  Document 1  Filed 09/30/15  Page 3 of 8  PageID 3

8.     Plaintiff is a Texas resident. According to his Original Petition, he resides in Lubbock County, Texas.[3] For purposes of removal, it must therefore be presumed that Plaintiff is now, and was at the time this action was commenced, a citizen of the Texas.

9.     Defendant Union is an insurance corporation organized under the law of the State of Iowa with its principal place of business in Iowa. This has not changed since the time the action was commenced.

10.    Defendant Cooper is a citizen of the state of Arizona.[4]

11.    Defendant Eagle is a citizen of the state of Indiana.[5]

12.    Plaintiff fails to allege the citizenship of Defendant Cam Fannin. However, Cam Fannin is a corporation organized under the laws of the State of Texas with its principle place of business in Texas. Therefore, Cam Fannin is a citizen of the state of Texas.[6] Although Cam Fannin is a citizen of the state of Texas, it has been improperly joined as a defendant in this case in an effort to defeat diversity of citizenship.

## A.    Fraudulent Misjoinder of Cam Fannin[7]

13.    Plaintiff alleges that Cam Fannin made misrepresentations regarding during the process of procuring insurance coverage for a building owned by Plaintiff.[8]  Based on these alleged misrepresentations, Plaintiff sues Cam Fannin for fraud and violation of the Texas Deceptive Trade Practices Act ("DTPA") in the procurement of the policy.[9]

---

[3] *Id.* at ¶2.

[4] *Id. at* ¶4.

[5] *Id. at* ¶4.

[6] *Id.*

[7] *See also* Brief in Support of Removal, being filed herewith and incorporated herein by reference.

[8] Pl. Original Pet. ¶¶14-15; 87.

[9] *Id. at* ¶83-87.

10/01/2015 08:25 FAX 2146981101    Wilson Elser    ☒005/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 40 of 171  PageID 186
Case 5:15-cv-00201-C  Document 1  Filed 09/30/15  Page 4 of 8  PageID 4

14.    In the same action, Plaintiff sues Defendants Union, Cooper, and Eagle because the insured building sustained damage as a result of a severe storm, and these defendants failed to explained coverage issues and failed to reasonably adjust and pay the claim. Plaintiff alleges claims for breach of contract, violations of the Texas Insurance Code and the DTPA, breach of the duty of good faith and fair dealing ("bad faith"), and fraud against Union for its role in the claim handling process.[10] He alleges claims for violations of the Texas Insurance Code and the DTPA and fraud against Eagle and Cooper for their role in the claim handling process.[11]

15.    In accordance with Rule 40 of the Texas Rules of Civil Procedure, defendants may be joined together in the same action only if (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) at least one "question of law or fact common to all of them will arise in the action."[12] This Court describes Rule 40 as follows:

> Rule 40(a) thus establishes two requirements for joining claims against multiple defendants: (1) a "same transaction" requirement and (2) a "common question" requirement. The "same transaction" requirement is governed by a logical relationship test that is borrowed from federal law. The "common question" requirement is satisfied by the presence of a single common question of law or fact.[13]

"A party who fails to satisfy both requirements may not be joined as a defendant."[14]

---

[10] *Id.* at ¶¶44-61.
[11] *Id.* at ¶62-82.
[12] TEX. R. CIV. P. 40(a).
[13] *Henley v. Meyer*, No. 3:14-CV-1080-L, 2015 WL 224369, at *2 (N.D. Tex. Jan. 16, 2015) (internal citations omitted).
[14] *Pride Transp., Inc. v. Harbin*, No. 4:10-CV-458-Y, 2010 WL 4314920, at *1 (N.D. Tex. Oct. 26,

16.     In this case, the claims against Defendants Union, Cooper, and Eagle arise out of separate and distinct transactions or occurrences. At least some facts must be relevant to both claims for the claims to arise out of the same transaction or occurrence.[15] The claims against Defendant Cam Fannin arise out of its alleged wrongdoing during the procurement of the policy, while the claims against Defendants Union, Cooper, and Eagle arise out of those defendants' alleged mishandling of Plaintiff's property damage claim at some point thereafter. There are no facts that are relevant to both sets of claims. As such, the claims against Defendants Union, Cooper, and Eagle do not arise out of the same transaction or occurrence as the claims against Defendant Cam Fannin and Plaintiff's claims against Defendant Cam Fannin have been misjoined with those against Defendants Union, Cooper, and Eagle.

17.     Because the claims against Defendants Union, Cooper, and Eagle are wholly distict from, and lack no real connection to, the claims against Defendant Cam Fannin, the misjoinder of the claims is egregious. Accordingly, Plaintiff's misjoinder of Cam Fannin was fraudulent and this Court should disregard Cam Fannin's residence for purposes of determining whether complete diversity of citizenship exists.[16]

18.     Since Plaintiff is a citizen of Texas, Union is a citizen of Iowa, Cooper is a citizen of Arizona, and Eagle is a citizen of Indiana, and because Cam Fannin has been improperly joined, diversity of citizenship exists among the parties.

---

2010).

[15] *Blalock Prescription Center, Inc. v. Lopez Guerra*, 986 S.W.2d 658, 663–64 (Tex. App.— Corpus Christi 1998, no pet.).

[16] *Henley*, 2015 WL 224369, at *5.

10/01/2015 08:25 FAX  2146981101      Wilson Elser                    ☑007/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 42 of 171  PageID 188
     Case 5:15-cv-00201-C  Document 1  Filed 09/30/15  Page 6 of 8  PageID 6

## IV.    AMOUNT IN CONTROVERSY

19.    Plaintiff's Original Petition indicates that Plaintiff seeks monetary relief from $200,000, but not over $1,000,000.00.[17] Plaintiff seeks actual damages, attorney's fees, statutory interest and penalties, exemplary damages and costs of court.[18]

20.    Accordingly, it is "facially apparent" that Plaintiff's claims exceed $75,000.00, which is all that is required to satisfy the amount-in-controversy requirement.[19]

21.    Moreover, Plaintiff also seeks to recover treble damages because it asserts Union's violation of the Texas Insurance Code was committed knowingly.[20]

22.    Therefore, it is clear that the amount in controversy exceeds the minimal jurisdictional requirements of the Court as set forth in 28 U.S.C. §1332(a).

## V.    ORIGINAL JURISDICTION

23.    There exists diversity of jurisdiction between the Plaintiff and Union, Cooper, Eagle. Because Cam Fannin was clearly improperly joined and the amount in controversy exceeds the minimal jurisdictional requirements, this Court has original jurisdiction of this case, pursuant to 28 U.S.C. §1332. This case may be removed to this Court pursuant to 28 U.S.C. §1441.

## VI.    NOTICE TO STATE COURT AND ADVERSE PARTY

24.    Contemporaneously herewith, Union is given notice of this removal to the 237th District Court in Lubbock County, Texas and Plaintiff.

## VII.    ATTACHMENTS

25.    As required by 28 U.S.C. §1446(a), all process, pleadings, and orders served upon

---

[17] Pl.'s Original Pet. at ¶100.
[18] Id.
[19] See Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).
[20] Pl.'s Original Pet. at ¶88.

2106686v.2                                                                 Page 16

10/01/2015 06:26 FAX 2146981101    Wilson Elser    ☑008/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 43 of 171  PageID 189
      Case 5:15-cv-00201-C  Document 1  Filed 09/30/15   Page 7 of 8   PageID 7

Union in the state court action are attached to this notice as Exhibit 1.

## VIII.  CONSENT OF ALL PARTIES

26.    On information and belief, Defendant Cooper has not been served.  However, on information and belief Defendant Cooper would consent to removal.  Eagle, and Cam Fannin consent to removal.

## IX.    CONCLUSION

27.    For the foregoing reasons, Union Insurance Company requests that this Court place this case on the docket of the United States District Court of the Northern District of Texas, Lubbock Division.  Union Insurance Company further requests a full and fair opportunity to brief, respond, and argue against any Motion for Remand filed by Plaintiff.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP**

By: _/s/ Michael S. Beckelman_
       Michael Beckelman
       State Bar No. 24042401
       michael.beckelman@wilsonelser.com
       909 Fannin Street, Suite 3300
       Houston, Texas 77010
       Ph. (713) 353-2000
       Fx. (713) 785-7780

       Lakeisha Forté Wells
       State Bar No. 24042237
       lakeisha.fortewells@wilsonelser.com
       Bank of America Plaza
       901 Main Street, Suite 4800
       Dallas, Texas 75202
       Ph. (214) 698-8047
       Fx. (214) 698-1101

**ATTORNEYS FOR DEFENDANT:
UNION INSURANCE COMPANY**

10/01/2015 06:26 FAX 2146981101    Wilson Elser    ☑009/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 44 of 171  PageID 190
Case 5:15-cv-00201-C  Document 1  Filed 09/30/15  Page 8 of 8  PageID 8

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served on all counsel in accordance with the Federal Rules of Civil Procedure via certified mail, return receipt requested and/or via facsimile on the 30th day of September, 2015:

*Via facsimile 409.838.8888*
David P. Wilson
Provost Umphrey Law Firm LLP
480 Park Street, Suite 100
Beaumont, Texas 77701

*Via facsimile 281.940.2137*
Chad T. Wilson
Kimberly N. Blum
Chad T Wilson Law Firm PLLC
1322 Space Park Drive, Suite A155
Houston, Texas 77058

*Via facsimile 210.226.8395*
Brett Schouest
Larissa Fields
Rachel Skinner
DYKEMA GOSSETT PLLC
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205

*Via facsimile 888.792.5142*
Matthew E. Ritchie
Matthew E. Ritchie Attorney
2449 South Willis, Suite 200
Abilene, TX 79605

Lakeisha Forté Wells

10/01/2015 08:28 FAX 2146981101          Wilson Elser                    ☑010/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 45 of 171   PageID 191
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 1 of 47   PageID 9

1

10/01/2015 06:26 FAX 2146981101          Wilson Elser                    ☑011/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 46 of 171   PageID 192
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 2 of 47   PageID 10

CAUSE NO. 2015-517,181

| | | |
|---|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING | § § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | LUBBOCK COUNTY, TEXAS |
| UNION INSURANCE COMPANY, | § | |
| SUSAN COOPER, EAGLE ADJUSTING | § | |
| SERVICES, INC., AND CAM FANNIN | § | |
| INSURANCE AGENCY, INC., | § | 237TH DISTRICT COURT |

## INDEX OF STATE COURT PLEADINGS

| EX. NO. | DOCUMENT FILED | FILING PARTY | DATE FILED |
|---------|----------------|--------------|------------|
| A. | Plaintiff's Original Petition | Plaintiff | 08/25/15 |
| B | Citation | 237th District Court | 09/01/15 |
| C | Original Answer | Defendant   Cam   Fannin Insurance Agency, Inc. | 09/03/15 |
| D | Original Answer and Special Exceptions | Defendant   Eagle   Adjusting Services Inc. | 09/18/15 |
| E | Answer to Plaintiff's Original Petition | Defendant | 09/21/15 |

10/01/2015 06:26 FAX  2146981101         Wilson Elser                                    ☑012/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 47 of 171   PageID 193
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 3 of 47   PageID 11

# EXHIBIT A

10/01/2015 06:27 FAX 2146981101          Wilson Elser                              ☑013/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 48 of 171  PageID 194
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 4 of 47  PageID 12

8/25/2015 3:01:14 PM
Barbara Sucsy
District Clerk
Lubbock County, Texas
**WA**

## NO. **2015-517,181**

| | | |
|---|---|---|
| CHRIS WILSON | § | IN THE DISTRICT COURT OF |
| d/b/a MR. WILSON PLUMBING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| UNION INSURANCE COMPANY, | § | LUBBOCK COUNTY, TEXAS |
| SUSAN COOPER, | § | |
| EAGLE ADJUSTING SERVICES, INC., | § | |
| AND CAM FANNIN INSURANCE | § | |
| AGENCY, INC., | § | |
| | § | |
| Defendants. | § | **237TH** DISTRICT COURT |

### PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND,
### AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Chris Wilson d/b/a Mr. Wilson Plumbing ("Plaintiff"), and files **Plaintiff's**

**Original Petition, Jury Demand, and Request for Disclosure,** complaining of Union Insurance

Company ("Union"), Susan Cooper ("Cooper"), Eagle Adjusting Services, Inc. ("Eagle"), and

Cam Fannin Insurance Agency, Inc. ("Cam Fannin") (or collectively "Defendants"), and for cause

of action, Plaintiff respectfully shows the following:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4
and 169.

### PARTIES

2. Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, resides in Lubbock County, Texas, and
owns the property located at 117 82nd Street, Lubbock, Texas, 79404.

# SCANNED

10/01/2015 06:27 FAX 2146981101        Wilson Elser                        ☑014/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 49 of 171  PageID 195
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 5 of 47  PageID 13

3.  Defendant Union Insurance Company, is a Texas insurance company, engaged in the business of insurance in the State of Texas. Plaintiff requests service of citation upon Union Insurance Company through its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**. Plaintiff requests service at this time.

4.  Defendant Cooper is an Adjuster in the course and working scope of employment with Union Insurance Company. Cooper may be served with process at the following address: **815 Wheatfields Road, Globe, Arizona 85501**. Plaintiff requests service at this time.

5.  Defendant Eagle is a third party adjusting company in the course and working scope of employment with Union Insurance Company. Eagle may be served with process at the following address: **14701 Cumberland Road #300, Noblesville, Indiana 46060-4374**. Plaintiff requests service at this time.

6.  Cam Fannin Insurance Agency, Inc. is a general lines insurance agency that sells property, casualty, life, accident, and HMO insurance to consumers in the State of Texas. Cam Fannin may be served with process, care of Stephen G. Fannin, at the following address: **1810 50th Street, Lubbock, Texas 79412-2704**.

### JURISDICTION

7.  The Court has jurisdiction over Union because Union engages in the business of insurance in the State of Texas, and the causes of action arise out of Union's business activities in the State of Texas, with reference to this specific case.

8.  The Court has jurisdiction over Cooper because Cooper engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of her business activities in the State of Texas, with reference to this specific case.

2

10/01/2015 06:27 FAX 2146981101    Wilson Elser    ☑015/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 50 of 171  PageID 196
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 6 of 47  PageID 14

9.    The Court has jurisdiction over Eagle because Eagle engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of its business activities in the State of Texas, with reference to this specific case.

10.    The Court has jurisdiction over Cam Fannin because Cam Fannin engages in the business of selling insurance policies in the State of Texas, and the causes of action arise out of its business activities in the State of Texas, with reference to this specific case.

## VENUE

11.    Venue is proper in Lubbock County, Texas, because the insured property is located in Lubbock County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred in Lubbock County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.032.

## FACTS

12.    Plaintiff asserts claims for fraud, breach of contract, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

13.    Plaintiff owns a Union property insurance policy, number CNA 4534974 ("the Policy"). At all relevant times, Plaintiff owned the insured premises located at 117 82nd Street, Lubbock, Texas, 79404 ("the Property").

14.    Union or its agent, Cam Fannin Insurance Agency, Inc., sold the Policy, insuring the Property, to Plaintiff. Union and/or Cam Fannin represented to Plaintiff that the Policy included hail and windstorm damage coverage for Plaintiff's Property.

15.    When Plaintiff negotiated his premium amount, Cam Fannin represented that the Policy Plaintiff purchased provided full coverage for hail and wind losses. Union later represented that the full coverage Policy sold by Cam Fannin did not afford the appropriate protection.

3

10/01/2015 06:27 FAX 2146981101          Wilson Elser                    ☑016/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 51 of 171   PageID 197
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 7 of 47   PageID 15

Specifically, the Policy sold by Cam Fannin was not a full coverage Policy, but rather, one with specific exclusions.

16.   Ultimately, based on wrongfully applied provisions in the Policy, Union has refused substantive coverage which includes, but is not limited to, replacement of the roof in a manner that complies with Lubbock County building codes, as well as storm-damaged portions of the interior.

17.   On or about August 28, 2014, the Property sustained extensive damage resulting from a severe storm that passed through the Lubbock, Texas, area.

18.   As a result of the storm, the Property sustained damage to the metal roof, flashing, metal siding on the front, left, right, and rear elevations.

19.   All damaged interior rooms require new insulation and replacement of light and electrical fixtures.

20.   More specifically, the hail and windstorm compromised the integrity of the roof, allowing water to aggressively penetrate the interior.  This is evidenced by numerous pockets of water that have formed along the foam insulation boards of the ceiling, and by the entry of water along the walls of the interior, including the front room, left center room, and the right and left rooms at the rear.

21.   In the aftermath of the wind and hailstorm occurring on or around August 28, 2014, Plaintiff submitted a claim to Union against the Policy for covered damage to the Property. Union assigned claim number 10095013 to Plaintiff's claim.

22.   Plaintiff asked Union to cover damage to the Property pursuant to the Policy.

23.   Union hired or assigned Eagle and Cooper to adjust the claim.

4

10/01/2015 06:28 FAX 2146981101          Wilson Elser                    ☑017/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 52 of 171   PageID 198
   Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 8 of 47   PageID 16

24.   After inspecting the Property, Cooper generated an estimate of damages in the amount of
      $145.51 for repairs to replace damaged roofing components.

25.   Cooper then applied a 92% depreciation rate to Plaintiff's recovery, leaving Plaintiff with
      $11.52 to replace all damaged roofing components.

26.   After, Cooper authorized a roofing labor minimum charge in the amount of $287.84, for a
      total recovery of $298.84.

27.   Upon application of Plaintiff's deductible, Plaintiff was left with $0.00 to complete any
      repairs.

28.   Plaintiff currently estimates that actual damages to the Property under the Policy are
      $155,845.91.

29.   In correspondence dated October 13, 2014, Union explained to Plaintiff that payment was
      for "fiberglass skylights [that] sustained hail damage that requires replacement . . . we are
      now closing our file without further action."

30.   In Defendants' investigation of Plaintiff's claim, Defendants failed to address any of the
      damage to the Property's metal roof.

31.   In correspondence to Plaintiff's counsel dated April 6, 2015, Union referenced the
      "Cosmetic Damage to Roof Coverings Caused by Hail" from the Exclusions and
      Limitations Section of Plaintiff's Policy, which reads:

              We do not pay for "cosmetic loss or damage" to the "roof covering of any
              building scheduled above if such damage is caused by peril of hail.

              We do cover hail damage to that portion of the "roof covering" that will
              allow the penetration of water or results in the failure of the "roof covering"
              to perform its intended function to keep out the elements over an extended
              period of time.

5

10/01/2015 06:28 FAX 2146981101     Wilson Elser                    ☑018/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 53 of 171  PageID 199
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 9 of 47  PageID 17

32.     However, Defendants never explained to Plaintiff how this exclusion specifically applied
        to Plaintiff's claim, or limited coverage, particularly in light of the fact that Plaintiff's roof
        has failed to keep out the elements, and has resulted in severe interior water damage.

33.     As detailed herein, Defendants failed to assess damages to Plaintiff's Property in a
        reasonable manner, even though the Policy provided coverage for wind and hail losses such
        as those suffered by Plaintiff.

34.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement
        Practices.  TEX. INS. CODE §541.060(a)(1).  Defendants failed to attempt to settle
        Plaintiff's claim in a fair manner, although Defendants were aware of Union's liability to
        Plaintiff under the Policy.  Specifically, Defendants failed to, in an honest and fair manner,
        balance their own interests in maximizing gains and limiting disbursements, with the
        interest of Plaintiff by failing to timely pay coverage due under the Policy.  Defendants
        also failed to show that the policy exclusion referenced as "Cosmetic Damage to Roof
        Coverings Caused by Hail," relied upon for denial of payment for Plaintiff's roof is clear,
        conspicuous, and applicable.

35.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement
        Practices.  TEX. INS. CODE §541.060(a)(2)(A).  Defendants failed to provide Plaintiff a
        reasonable explanation for partial denial of the claim, and for not making full payment
        under the terms of the Policy.  Furthermore, Defendants did not communicate that any
        future settlements or payments would be forthcoming for the entire loss covered under the
        Policy, nor did they provide any explanation for failing to settle Plaintiff's claim properly.
        However, Union did state that they would not be taking further action on Plaintiff's claim.

6

10/01/2015 06:28 FAX 2146981101          Wilson Elser                              ☑019/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 54 of 171  PageID 200
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 10 of 47  PageID 18

36.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement
       Practices. TEX. INS. CODE §541.060(a)(4). Union refused to provide any coverage due
       to Plaintiff under the terms of the Policy. Specifically, Union, through its agents, servants,
       and representatives, failed to assess damages properly, and performed an outcome-oriented
       investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable
       evaluation of losses on the Property.

37.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment
       of Claims. TEX. INS. CODE §542.055. Defendants failed to reasonably accept or deny
       Plaintiff's entire claim within the statutorily mandated time after receiving all necessary
       information.

38.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment
       of Claims. TEX. INS. CODE §542.056. Defendants failed to meet their obligations under
       the Texas Insurance Code regarding timely payment of the claim. Specifically, Union has
       delayed full payment of Plaintiff's claim longer than allowed.

39.    Defendants made the false misrepresentations described herein and others to Plaintiff,
       either knowingly or recklessly, as a positive assertion, without knowledge of the truth.
       Plaintiff relied on Defendants' misrepresentations, including but not limited to those
       regarding coverage, the cause of, scope of, and cost to repair damage to the Property.
       Plaintiff's damages are a result of his reliance on misrepresentations regarding coverage,
       the cause of, scope of, and cost to repair damage to the Property.

40.    Defendants' misrepresentations, unreasonable delays, and continued denials constitute a
       breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance

                                            7

10/01/2015 06:28 FAX 2146981101     Wilson Elser     ☑020/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 55 of 171   PageID 201
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 11 of 47   PageID 19

Code. Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between Union and Plaintiff.

41.  Union failed to perform its contractual duties to Plaintiff under the terms of the Policy. Specifically, Union refused to pay the full proceeds of the Policy, although due demand was made for an amount sufficient to cover the damaged Property, and all conditions precedent to recover upon the Policy have been carried out by Plaintiff.

42.  As described herein, Union, through its agents or representatives, engaged in egregiously poor claims handling practices, and used language in the Policy to wrongfully deny the claim.

43.  Defendants' wrongful acts and omissions forced Plaintiff to retain the professional services of the attorneys and law firms representing him with respect to these causes of action.

### CAUSES OF ACTION AGAINST UNION INSURANCE COMPANY

### BREACH OF CONTRACT

44.  Union is liable to Plaintiff for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing. It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between Union and Plaintiff.

45.  Union's failure and/or refusal to pay adequate compensation as obligated under the terms of the Policy, and under the laws of the State of Texas, constitutes a breach of Union's insurance contract with Plaintiff.

10/01/2015 08:29 FAX 2146981101          Wilson Elser                          ☑021/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 56 of 171  PageID 202
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 12 of 47  PageID 20

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

46.    Union's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are actionable by TEX. INS. CODE §541.151.

47.    Union's unfair settlement practice of misrepresenting to Plaintiff material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

48.    Union's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

49.    Union's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for denial of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

50.    Union's unfair settlement practice of refusing to pay Plaintiff's claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

9

10/01/2015 06:29 FAX 2146981101     Wilson Elser                    ☑022/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 57 of 171   PageID 203
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 13 of 47   PageID 21

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:
### THE PROMPT PAYMENT OF CLAIMS

51.   Union's conduct constitutes multiple violations of the Texas Insurance Code, Prompt
      Payment of Claims. All violations made under this article are actionable by
      TEX. INS. CODE §542.060.

52.   Union's failure to request from Plaintiff all items, statements, and forms Union reasonably
      believed would be required within the applicable time constraints constitutes a non-prompt
      payment and a violation of TEX. INS. CODE §542.055.

53.   Union's failure to notify Plaintiff in writing with a reasonable explanation for denying the
      claim constitutes a violation of this subsection. TEX. INS. CODE §542.056.

54.   Union's delay in rendering full payment of Plaintiff's claim following receipt of all items,
      statements, and forms reasonably requested and required, for longer than the amount of
      time provided, constitutes a non-prompt payment. TEX. INS. CODE §542.058.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

55.   Union's conduct constitutes a breach of the common law duty of good faith and fair dealing
      owed to an insured in insurance contracts.

56.   Union's failure to adequately and reasonably investigate and evaluate Plaintiff's claim,
      although, at that time, Union knew or should have known by the exercise of reasonable
      diligence that liability was reasonably clear, constitutes a breach of the duty of good faith
      and fair dealing.

### DTPA VIOLATIONS

57.   Union's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act
      ("DTPA"), TEX. BUS. & COM. CODE 17.41–63. Plaintiff is a consumer of goods and

10/01/2015 06:29 FAX 2146981101          Wilson Elser                                    ☑023/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 58 of 171  PageID 204
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 14 of 47  PageID 22

services provided by Union pursuant to the DTPA. Plaintiff has met all conditions
precedent to bringing this cause of action against Union. Specifically, Union's violations
of the DTPA include, without limitation, the following matters:

A.  By its acts, omissions, failures, and conduct, Union has violated sections
    17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Union's violations
    include, (1) unreasonable delays in the investigation, adjustment, and resolution of
    Plaintiff' claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure
    to pay for the proper repair of Plaintiff's Property when liability has become
    reasonably clear. This gives Plaintiff the right to recover under section 17.46(b)(2).

B.  Union represented to Plaintiff that the Policy and its adjusting and investigative
    services had characteristics or benefits they did not possess, which gives Plaintiff
    the right to recover under section 17.46(b)(5) of the DTPA.

C.  As described herein, Union represented to Plaintiff that the Policy and its adjusting
    services were of a particular standard, quality, or grade when they were of another,
    in violation of section 17.46(b)(7) of the DTPA.

D.  As described above, Union advertised the Policy and its adjusting services with the
    intent not to sell them as advertised, in violation of section 17.46(b)(9) of the
    DTPA. Specifically, Union wrongfully denied the claim under a "collapse," when
    the claim should have been covered under wind peril.

E.  Union breached an express warranty that damages caused by wind and hail would
    be covered under the Policy. This breach entitles Plaintiff to recover under sections
    17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA.

11

10/01/2015 06:29 FAX 2146981101          Wilson Elser                                    ☑024/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 59 of 171  PageID 205
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15   Page 15 of 47  PageID 23

F.     Union's actions are unconscionable in that Union took advantage of Plaintiff's lack
       of knowledge, ability, and experience to a grossly unfair degree.    Union's
       unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of
       the DTPA; and

G.     Union's conduct, acts, omissions, and failures are unfair practices in the business
       of insurance in violation of section 17.50(a)(4) of the DTPA.

58.    Each of Union's above-described acts, omissions, and failures is a producing cause of
       Plaintiff's damages.  All of the above-described acts, omissions, and failures were
       committed "knowingly" and "intentionally" by Union, as defined by the Texas Deceptive
       Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

## FRAUD

59.    Union is liable to Plaintiff for common law fraud.

60.    Each and every representation described above concerned material facts that absent such
       representations, Plaintiff would not have acted as he did, and Union knew the
       representations were false or made recklessly without any knowledge of their truth as a
       positive assertion.

61.    Union made these statements intending that Plaintiff act upon them.  Plaintiff then acted in
       reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common
       law fraud.

12

10/01/2015 08:30 FAX 2146981101          Wilson Elser                                    ☑025/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 60 of 171  PageID 206
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 16 of 47  PageID 24

## CAUSES OF ACTION AGAINST DEFENDANT SUSAN COOPER

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

62.    Cooper's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act. TEX. INS. CODE §541.060(a).

63.    Cooper is individually liable for her unfair and deceptive acts, irrespective of the fact that she was acting on behalf of Union, because Cooper is a "person," as defined by TEX. INS. CODE §541.002(2).

64.    Cooper knowingly denied damage to the Property under an invalid policy exclusion. As such, Cooper failed to adopt and implement reasonable standards for the prompt and reasonable investigation of the claim arising under the Policy. TEX. INS. CODE §542.003(3).

65.    Furthermore, Cooper did not attempt in good faith to effect a fair, prompt, and equitable settlement of the claim. TEX. INS. CODE §542.003(4).

66.    Cooper's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice. TEX. INS. CODE §541.060(a)(3).

67.    Cooper's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though Union's liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

13

10/01/2015 06:30 FAX 2146981101          Wilson Elser                                    ☑026/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 61 of 171  PageID 207
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15   Page 17 of 47  PageID 25

### DTPA VIOLATIONS

68.    Cooper's conduct constitutes multiple violations of the Texas Deceptive Trade Practices
       Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods
       and services provided by Cooper pursuant to the DTPA.  Plaintiff has met all conditions
       precedent to bringing this cause of action against Cooper.  Specifically, Cooper's violations
       of the DTPA include, without limitation, the following matters:

       A.    By her acts, omissions, failures, and conduct, Cooper has violated sections
             17.46(b)(2), (5), and (7) of the DTPA.  Cooper's violations include, (1)
             unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's
             claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for
             the proper repair of Plaintiff's property when Union's liability has become
             reasonably clear, which gives Plaintiff the right to recover under section
             17.46(b)(2).

       B.    Cooper represented to Plaintiff that her adjusting and investigative services had
             characteristics or benefits they did not possess, which gives Plaintiff the right to
             recover under section 17.46(b)(5) of the DTPA.

       C.    Cooper represented to Plaintiff that her adjusting services were of a particular
             standard, quality, or grade when they were of another, in violation of section
             17.46(b)(7) of the DTPA.

       F.    Cooper's actions are unconscionable in that Cooper took advantage of Plaintiff's
             lack of knowledge, ability, and experience to a grossly unfair degree.  Cooper's

                                                14

10/01/2015 06:30 FAX 2146981101        Wilson Elser                        ☑027/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 62 of 171  PageID 208
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 18 of 47  PageID 26

unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of
the DTPA; and

G.    Cooper's conduct, acts, omissions, and failures are unfair practices in the business
of insurance in violation of section 17.50(a)(4) of the DTPA.

69.   Each of Cooper's above-described acts, omissions, and failures is a producing cause of
Plaintiff's damages.   All of the above-described acts, omissions, and failures were
committed "knowingly" and "intentionally" by Cooper, as defined by the Texas Deceptive
Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

### FRAUD

70.   Cooper is liable to Plaintiff for common law fraud.

71.   Each and every representation described above concerned material facts that absent such
representations, Plaintiff would not have acted as he did, and Cooper knew the
representations were false or made recklessly without any knowledge of their truth as a
positive assertion.

72.   Cooper made these statements intending that Plaintiff act upon them.  Plaintiff then acted
in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting
common law fraud.

### CAUSES OF ACTION AGAINST DEFENDANT EAGLE ADJUSTING SERVICES, INC.

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

73.   Eagle's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim
Settlement Practices Act.  TEX. INS. CODE §541.060(a).

15

10/01/2015 06:30 FAX 2146981101          Wilson Elser                                    ☑028/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 63 of 171  PageID 209
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 19 of 47  PageID 27

74.    Eagle, through its agent, Cooper, knowingly denied damage to the Property under an
       invalid policy exclusion. As such, Eagle failed to adopt and implement reasonable
       standards for the prompt and reasonable investigation of the claim arising under the Policy.
       TEX. INS. CODE §542.003(3).

75.    Furthermore, Eagle did not attempt in good faith to effect a fair, prompt, and equitable
       settlement of the claim. TEX. INS. CODE §542.003(4).

76.    Eagle's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable
       explanation of the basis in the Policy, in relation to the facts or applicable law, for denial
       of the claim, also constitutes an unfair method of competition and an unfair and deceptive
       act or practice. TEX. INS. CODE §541.060(a)(3).

77.    Eagle's unfair settlement practice of failing to attempt in good faith to make a prompt, fair,
       and equitable settlement of the claim, even though Union's liability under the Policy was
       reasonably clear, constitutes an unfair method of competition and a deceptive act or
       practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

78.    Eagle's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act
       ("DTPA"), TEX. BUS. & COM. CODE 17.41–63. Plaintiff is a consumer of goods and
       services provided by Eagle pursuant to the DTPA. Plaintiff has met all conditions
       precedent to bringing this cause of action against Eagle. Specifically, Eagle's violations
       of the DTPA include, without limitation, the following matters:

       A.    By its acts, omissions, failures, and conduct, Eagle has violated sections
             17.46(b)(2), (5), and (7) of the DTPA. Eagle's violations include, (1) unreasonable

16

10/01/2015 06:31 FAX 2146981101          Wilson Elser                    ☑029/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 64 of 171  PageID 210
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 20 of 47   PageID 28

delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2)
failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper
repair of Plaintiff's property when Union's liability has become reasonably clear,
which gives Plaintiff the right to recover under section 17.46(b)(2).

B.     Eagle represented to Plaintiff that its adjusting and investigative services had
characteristics or benefits they did not possess, which gives Plaintiff the right to
recover under section 17.46(b)(5) of the DTPA.

C.     Eagle represented to Plaintiff that its adjusting services were of a particular
standard, quality, or grade when they were of another, in violation of section
17.46(b)(7) of the DTPA.

F.     Eagle's actions are unconscionable in that Eagle took advantage of Plaintiff's lack
of knowledge, ability, and experience to a grossly unfair degree.   Eagle's
unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of
the DTPA; and

G.     Eagle's conduct, acts, omissions, and failures are unfair practices in the business of
insurance in violation of section 17.50(a)(4) of the DTPA.

79.    Each of Eagle's above-described acts, omissions, and failures is a producing cause of
Plaintiff's damages.  All of the above-described acts, omissions, and failures were
committed "knowingly" and "intentionally" by Cooper, as defined by the Texas Deceptive
Trade Practices Act. TEX. BUS. & COM. CODE 17.45.

17

10/01/2015 06:31 FAX 2146981101       Wilson Elser                    ☒030/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 65 of 171   PageID 211
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 21 of 47   PageID 29

## FRAUD

80.   Eagle is liable to Plaintiff for common law fraud.

81.   Each and every representation described above concerned material facts that absent such
      representations, Plaintiff would not have acted as he did, and Eagle knew the
      representations were false or made recklessly without any knowledge of their truth as a
      positive assertion.

82.   Eagle made these statements intending that Plaintiff act upon them. Plaintiff then acted in
      reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common
      law fraud.

### CAUSES OF ACTION AGAINST DEFENDANT
### CAM FANNIN INSURANCE AGENCY, INC.

### DTPA VIOLATIONS

83.   Cam Fannin's conduct constitutes multiple violations of the Texas Deceptive Trade
      Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.46. Specifically, its violations
      of the DTPA include, without limitation, the following matters:

      A.   By its acts, omissions, failures, and conduct, Cam Fannin violated sections
           17.46(b)(2) and 17.46(b)(5) of the DTPA. Cam Fannin's violations include causing
           confusion as to the Policy benefits, and representing that the Policy had benefits or
           characteristics that it did not possess.

      B.   Cam Fannin breached an express warranty during the sale of the Policy that the
           damages caused by wind and hail would be covered under the Policy, when they
           were not. This breach entitles Plaintiff to recover under sections 17.46(b)(12),
           17.46(b)(20), and 17.50(a)(2) of the DTPA.

18

10/01/2015 06:31 FAX 2146981101     Wilson Elser     ☑031/071

Case 5:15-cv-00201-C Document 7 Filed 10/30/15 Page 66 of 171 PageID 212
Case 5:15-cv-00201-C Document 1-1 Filed 09/30/15 Page 22 of 47 PageID 30

    C.     Cam Fannin's conduct, acts, omissions, and failures are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

    D.     Cam Fannin's actions are unconscionable in that Cam Fannin took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Cam Fannin's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

84.     Each of Cam Fannin's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages. All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally" by Cam Fannin, as defined by the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE 17.45.

## FRAUD

85.     Cam Fannin is liable to Plaintiff for common law fraud.

86.     Each and every representation described above concerned material facts that absent such representations, Plaintiff would not have acted as he did, and Cam Fannin knew the representations were false or made recklessly without any knowledge of their truth as a positive assertion.

87.     Cam Fannin made these statements intending that Plaintiff act upon them. Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud. Specifically, Cam Fannin represented to Plaintiff during the sale of the Policy that the Policy had benefits or characteristics it did not possess. Plaintiff relied on these statements, and as a result, has suffered damages to his Property.

10/01/2015 06:31 FAX 2146981101          Wilson Elser                                    ☑032/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 67 of 171  PageID 213
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15   Page 23 of 47  PageID 31

## KNOWLEDGE

88.   Defendants made each of the acts described above, together and singularly, "knowingly,"
      as defined in the Texas Insurance Code, and each was a producing cause of Plaintiff's
      damages described herein.

## WAIVER AND ESTOPPEL

89.   Defendants waived and are estopped from asserting any coverage defenses, conditions,
      exclusions, or exceptions to coverage not contained in any reservation of rights letter to
      Plaintiff.

## DAMAGES

90.   The damages caused to the Property have not been properly addressed since the claim was
      made, causing further damage to the Property, and undue hardship and burden to Plaintiff.
      These damages are a direct result of Defendants' mishandling of Plaintiff's claim in
      violation of the laws above.

91.   Plaintiff would show that all of the aforementioned acts, taken together or singularly,
      constitute the producing causes of damages sustained. Defendants' above described acts,
      omissions, failures, and conduct have caused Plaintiff's damages, which include, without
      limitation, the cost to properly repair the Property, and any investigative and engineering
      fees incurred.

92.   For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the
      amount of the claim, consequential damages, together with attorney's fees.

93.   Plaintiff currently estimates that actual damages to the Property under the Policy are
      $155,845.91.

10/01/2015 08:32 FAX 2146981101          Wilson Elser                                    ☑033/071

Case 5:15-cv-00201-C  Document 7   Filed 10/30/15   Page 68 of 171  PageID 214
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15   Page 24 of 47   PageID 32

94.     For noncompliance with the DTPA and the Texas Insurance Code, Unfair Settlement

        Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits owed

        pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing and

        intentional conduct, Plaintiff asks for three (3) times the actual damages.

        TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(b)(1).

95.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff

        is entitled to the amount of the claim, plus an eighteen percent (18%) per annum penalty

        on that claim, as damages, as well as pre-judgment interest, and reasonable attorney's fees.

        TEX. INS. CODE §542.060.

96.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to

        compensatory damages, including all forms of loss resulting from Union's breach of duty,

        such as additional costs, economic hardship, losses due to nonpayment of the amount owed,

        exemplary damages, and damages for emotional distress.

97.     Union's breach of the common law duty of good faith and fair dealing was committed

        intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with

        "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies

        Code. These violations are the type of conduct which the State of Texas protects its citizens

        against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery

        of exemplary damages in an amount determined by the finder of fact sufficient to punish

        Union for its wrongful conduct and to deter others from committing similar acts in the

        future.

                                              21

10/01/2015 06:32 FAX 2148981101     Wilson Elser     ☑ 034/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 69 of 171  PageID 215
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 25 of 47  PageID 33

98.     For fraud, Plaintiff is entitled to recover actual and exemplary damages for knowingly
        fraudulent and malicious representations, along with attorney's fees, interest, and court
        costs.

99.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the
        services of the attorneys subscribed to this pleading. Therefore, under Chapter 38 of the
        Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance
        Code, and section 17.50 of the DTPA, Plaintiff is entitled to recover a sum for the
        reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this
        action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

100.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states
        that the damages sought are in an amount within the jurisdictional limits of this Court. As
        required by Rule 47(c)(4) of the Texas Rules of Civil Procedure, Plaintiff's counsel states
        that Plaintiff seeks only monetary relief of no less than $200,000.00, but no more than
        $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment
        interest, and attorney's fees. A jury will ultimately determine the monetary relief actually
        awarded, however. Plaintiff also seeks pre-judgment and post-judgment interest at the
        highest legal rate.

## REQUESTS FOR DISCLOSURE

101.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiff requests that Defendants
        disclose, within fifty (50) days from the date this request is served, the information or material
        described in Rules 190.2(b)(6) and 194.2.

22

10/01/2015 06:32 FAX 2146981101          Wilson Elser                    ☑035/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 70 of 171  PageID 216
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 26 of 47  PageID 34

## JURY DEMAND

102.  Plaintiff hereby requests a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Lubbock County, Texas. Plaintiff hereby tenders the appropriate jury fee.

## PRAYER

Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, prays that Defendants, Union Insurance Company, Susan Cooper, Eagle Adjusting Services, Inc., and Cam Fannin Insurance Company, Inc., be cited and served to appear, and that upon trial hereof, Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, recovers from Defendants such sums as would reasonably and justly compensate him in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended on Plaintiff's behalf, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, at law or in equity, to which Plaintiff, Chris Wilson d/b/a Mr. Wilson Plumbing, may show himself justly entitled to.

10/01/2015 06:32 FAX 2146981101          Wilson Elser                                    ☑036/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 71 of 171  PageID 217
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 27 of 47  PageID 35

Respectfully submitted,

PROVOST UMPHREY LAW FIRM LLP

By: /s/ David P. Wilson

David P. Wilson
Bar No. 21672700
DWilson@pulf.com
490 Park Street, Suite 100
Beaumont, Texas 77701
Telephone: (409) 835-6000
Facsimile: (409) 838-8888

CHAD T WILSON LAW FIRM PLLC

Chad T. Wilson
Bar No. 24079587
CWilson@cwilsonlaw.com
Kimberly N. Blum
Bar No. 24092148
KBlum@cwilsonlaw.com
1322 Space Park Drive, Suite A155
Houston, Texas 77058
Telephone: (832) 415-1432
Facsimile: (281) 940-2137

ATTORNEYS FOR PLAINTIFF

10/01/2015 06:33 FAX 2146981101 Wilson Elser ☑037/071

Case 5:15-cv-00201-C Document 7 Filed 10/30/15 Page 72 of 171 PageID 218
Case 5:15-cv-00201-C Document 1-1 Filed 09/30/15 Page 28 of 47 PageID 36

# EXHIBIT B

10/01/2015 08:33 FAX 2146981101     Wilson Elser                                    ☑038/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 73 of 171   PageID 219
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 29 of 47   PageID 37

## CITATION
## THE STATE OF TEXAS

TO:    Union Insurance Company by serving its registered agent, CT Corporation System
1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136

Defendant Greetings:

### NOTICE

You have been sued. You may employ an attorney. If you or your attorney do not file a
written answer with the clerk of the court who issued this citation by 10 o'clock a.m. on the
Monday following the expiration of 20 (twenty) days after you have been served this
citation and Original Petition, Jury Demand, and Request for Disclosure, a default
judgment may be taken against you.

Said Plaintiff's Original Petition, Jury Demand, and Request for Disclosure was filed in the
237th District Court of Lubbock County, Texas, on August 25, 2015. The file number of said
suit being Cause Number 2015-517,181, and styled:

Chris Wilson d/b/a Mr. Wilson Plumbing,
*Plaintiff*
V.
Union Insurance Company, Susan Cooper, Eagle Adjusting Services, Inc.,
and Cam Fannin Insurance Agency, Inc.,
*Defendant*

The nature of Plaintiff's demand is set out and shown by a true and correct copy of the Original
Petition, Jury Demand, and Request for Disclosure, accompanying this citation, and made a
part thereof.

Plaintiff is represented by:
David P. Wilson, 490 Park Street, Beaumont, TX 77701, (409) 835-6000

The officer executing this writ shall promptly serve the same according to requirements of law,
and the mandates hereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Lubbock County, Texas, this
Thursday, August 27, 2015, at 9:03 AM.

Barbara Suesy, District Clerk
237th District Court
P.O. Box 10536 (79408)
904 Broadway
Lubbock, Texas 79401

By    Daniele Mitchell                    Deputy
Daniele Y. Mitchell

10/01/2015 06:33 FAX 2146981101          Wilson Elser                              ☑039/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 74 of 171   PageID 220
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 30 of 47   PageID 38

 CT Corporation

**Service of Process
Transmittal**
08/31/2015
CT Log Number 527731678

TO:    Aaron Pearce
       Continental Western Insurance Company
       PO Box 1594
       Des Moines, IA 50306-1594                    **RECEIVED**

RE:    **Process Served in Texas**                  SEP 0 1 2015

FOR:   Union Insurance Company  (Domestic State: NE)   **HO LEGAL**

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| TITLE OF ACTION: | Chris Wilson, etc., Pltf. vs. Union Insurance Company, et al., Dfts. |
| DOCUMENT(S) SERVED: | Citation, Original Petition |
| COURT/AGENCY: | 237th Judicial District Court Lubbock County, TX<br>Case # 2015517181 |
| NATURE OF ACTION: | Insurance Litigation - Claim for policy benefits |
| ON WHOM PROCESS WAS SERVED: | C T Corporation System, Dallas, TX |
| DATE AND HOUR OF SERVICE: | By Certified Mail on 08/31/2015 postmarked on 08/27/2015 |
| JURISDICTION SERVED : | Texas |
| APPEARANCE OR ANSWER DUE: | By 10:00 a.m. on the Monday next after the expiration of 20 days after you were<br>served(Document(s) may contain additional answer dates) |
| ATTORNEY(S) / SENDER(S): | David P. Wilson<br>PROVOST UMPHREY LAW FIRM LLP<br>490 Park Street, Suite 100<br>Beaumont, TX 77701<br>409-835-6000 |
| ACTION ITEMS: | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 781251911104 |
| SIGNED: | C T Corporation System |
| ADDRESS: | 1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201 |
| TELEPHONE: | 214-932-3601 |

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

10/01/2015 06:33 FAX 2146981101          Wilson Elser                              ☑ 040/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 75 of 171   PageID 221
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 31 of 47   PageID 39

# EXHIBIT C

10/01/2015 06:33 FAX 2146981101          Wilson Elser                    ☑041/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 76 of 171  PageID 222
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 32 of 47  PageID 40

Cause No. 2015-517,181

| | | |
|---|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING, Plaintiff, | § § § § | IN THE 237th DISTRICT COURT |
| VS. | § § | OF |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC., AND CAM FANNIN INSURANCE AGENCY, INC., Defendants. | § § § § § | LUBBOCK COUNTY, TEXAS |

## ORIGINAL ANSWER OF DEFENDANT CAM FANNIN INSURANCE AGENCY, INC.

TO THE HONORABLE JUDGE OF THIS COURT:

Cam Fannin Insurance Agency, Inc. ("Fannin"), defendant in the above-referenced matter, makes and files this Original Answer, and for such would show as follows:

### 1.
### GENERAL DENIAL

Subject to any admissions or stipulations that may be made by the parties, Fannin enters a general denial as is expressly authorized by Texas Rule of Civil Procedure 92. Accordingly, Fannin requests that Plaintiff be required to prove his claims by a preponderance of the evidence in accordance with Texas law, if he can do so.

### 2.
### AFFIRMATIVE DEFENSES

Fannin would show that the incident and/or damages in question are a result of the negligence of Plaintiff in, among other things, failing to attend to his own insurance needs. Accordingly, Fannin requests that the Court resolve this matter pursuant to the proportionate responsibility provisions set out in Chapter 33 of the Texas Civil Practice and Remedies Code.

Any damages that are claimed by Plaintiff are subject to an offset based on the cost of the insurance that Plaintiff claims should have been, but was not, in place.

10/01/2015 08:34 FAX 2146981101          Wilson Elser                              ☑042/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 77 of 171  PageID 223
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 33 of 47  PageID 41

Any damages claimed by Plaintiff are subject to the terms and conditions of the policy that Plaintiff claims he should have obtained.

Any claims for exemplary, punitive, and/or additional damages are subject to and limited by the due process clauses of the United States constitution and the constitution of the State of Texas.

Any claims for punitive, exemplary, and/or additional damages are subject to and limited by the provisions of Chapter 41 of the Texas Civil Practice and Remedies Code. Accordingly, this matter should be determined pursuant to the provisions of that chapter.

### Prayer for Relief

Fannin requests that Plaintiff take nothing with respect to the claims that have been asserted herein, for its costs of court, and for such other and further relief to which it may be justly entitled.

Respectfully Submitted,

/s Matthew E. Ritchie
Matthew E. Ritchie
State Bar No. 16948030
2449 South Willis, Suite 200
Abilene, Texas 79605
(325) 692-1107
(888) 792-5142 (fax)
matt@mritchielaw.com

ATTORNEY FOR DEFENDANT CAM FANNIN
INSURANCE AGENCY, INC.

10/01/2015 06:34 FAX 2146981101          Wilson Elser                    ☑043/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 78 of 171   PageID 224
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 34 of 47   PageID 42

## CERTIFICATE OF SERVICE

The foregoing document was served on the persons listed below on September 3, 2015 by the Texas E-file system:

David P. Wilson
490 Park Street, Suite 100
Beaumont, Texas 77701

/s Matthew E. Ritchie
Matthew E. Ritchie

10/01/2015 06:34 FAX  2146981101          Wilson Elser                    044/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 79 of 171   PageID 225
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 35 of 47   PageID 43

# EXHIBIT D

10/01/2015 06:34 FAX 2146981101        Wilson Elser                    ☑045/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 80 of 171  PageID 226
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 36 of 47  PageID 44

Filed 9/18/2015 1:38:51 PM
Barbara Sucsy
District Clerk
Lubbock County, Texas

dl

### CAUSE NO. 2015-517,181

| CHRIS WILSON | § | IN THE DISTRICT COURT OF |
| d/b/a MR. WILSON PLUMBING | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| UNION INSURANCE COMPANY | § | LUBBOCK COUNTY, TEXAS |
| SUSAN COOPER,, | § | |
| EAGLE ADJUSTING SERVICES, INC., | § | |
| AND CAM FANNIN INSURANCE | § | |
| AGENCY, INC | § | |
| Defendants. | § | 237TH JUDICIAL DISTRICT |

## EAGLE ADJUSTING SERVICES, INC.'S
## ORIGINAL ANSWER AND SPECIAL EXCEPTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

EAGLE ADJUSTING SERVICES, INC.'S ("Defendant"), files its Original Answer and

Special Exceptions as follows:

### I.

### GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, Defendant generally denys the allegations

contained in Plaintiff's Original Petition and demands strict proof by a preponderance of the

evidence of all Plaintiff's allegations.

### II.

### DEFENSES

### Payment

Plaintiff's claims have been fully adjusted and appropriate payment tendered.

1

10/01/2015 06:34 FAX 2146981101          Wilson Elser                    ☑046/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 81 of 171  PageID 227
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 37 of 47  PageID 45

## Limit of Liability

Plaintiff's damages, if any, must be limited by the amount set forth in the policy
limitations provisions of the applicable policy.

## Offset and/or Credit

Plaintiff's damages, if any, must be offset by the amount of applicable policy deductibles.
Further, any award to Plaintiff must be offset by all prior payments tendered regarding the claims
that form the basis of Plaintiff's lawsuit and by all payments and credits otherwise available.

## Due Process

To the extent that Plaintiff prays for exemplary damages, Defendant invokes its rights
under the due process clause of the Fifth Amendment of the United States Constitution as
applied to the states through the Fourteenth Amendment of the United States Constitution.
Defendant affirmatively pleads that Plaintiff's pleading of exemplary damages is violative of the
due process clauses of the Fifth and Fourteenth Amendments inasmuch as exemplary damages
can be assessed:

1.    In an amount left to the discretion of the jury and judge;

2.    In assessing such penalty or exemplary awards, Plaintiff needs only prove
      the theory of gross negligence on a "clear and convincing evidence"
      standard and not "beyond a reasonable doubt" standard as should be
      required in assessing a punishment award;

3.    The assessment of such a punishment and/or exemplary award is not based
      upon a clearly defined statutory enactment setting forth a specific means
      requirement and/or the prerequisites of criminal fine and in effect, allows
      the assessment of such awards even though there are no special standards,
      limits or other statutory requirements set forth that define the means and
      scope and limit of such awards. Therefore, the awards are unduly vague
      and do not meet the requirements of due process; and

2

10/01/2015 06:35 FAX 2146981101          Wilson Elser                                    ☑047/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 82 of 171   PageID 228
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15   Page 38 of 47   PageID 46

4.    In essence, Defendant is subject to all of the hazards and risks of what
amounts to a fine, and in fact, such awards often exceed normal, criminal
fines, but Defendant receives none of the basic rights accorded to a
criminal defendant when being subjected to possible criminal penalties.

## Equal Protection

To the extent Plaintiff prays for punitive, exemplary, or otherwise enhanced damages,

such request should be denied because it violates the equal protection rights guaranteed by the

Fifth and Fourteenth Amendments to the Constitution of the United States and the provisions of

the Eighth Amendment to the Constitution of the United States.

## Punitive Damage Limitation

With respect to Plaintiff's claims for damages, any award of punitive damages must be

limited to the greater of: (1) two times the amount of economic damages plus an amount equal to

any non-economic damages found by the jury, not to exceed $750,000; or (2) $200,000, pursuant

to the statutory mandates of Texas Civil Practice & Remedies Code §§ 41.002-41.009.

Defendant reserves the right to seek a bifurcation of any punitive damage issues at the trial of

this case as permitted by Section 41 of Texas Civil Practice & Remedies Code.

## Failure to Mitigate

Plaintiff has failed to mitigate any damages he may have suffered as a result of

Defendant's alleged actions.

## Responsibility of Others

Pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code, Defendant is

entitled to a credit or appropriate offset for: (a) any damages or losses attributable to the conduct,

products, and breaches of third parties; and (b) any amounts paid in settlement by or on behalf of

such third parties.

3

6323904.1

10/01/2015 06:35 FAX 2146981101     Wilson Elser     ☑048/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 83 of 171   PageID 229
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 39 of 47   PageID 47

## III.

## SPECIAL EXCEPTIONS

### Plaintiff's Claims for Alleged Violations
### of TEX. INS. CODE § 541.001 et seq.

Defendant specially excepts to paragraphs 12, 34-36, 39-40, 73, and 76-77 of Plaintiff's Original Petition because Plaintiff's claims regarding Defendant's alleged violations of TEX. INS. CODE § 541.001 *et seq.* are deficient. Specifically, Plaintiff failed to give Defendant fair notice of the facts and circumstances supporting the alleged Insurance Code violations in the Petition. As a result, Plaintiff should be required to file an amended pleading which sets forth facts and evidence in support of Plaintiff's claims for Defendant's alleged Insurance Code violations, as well as the alleged damages.

### Plaintiff's Claims for Alleged Violations
### of TEX. INS. CODE § 542.001 et seq.

Defendant specially excepts to paragraphs 12, 37- 39, 40, and 74-75 of Plaintiff's Original Petition because Plaintiff's claims regarding Defendant's alleged violations of TEX. INS. CODE § 542.001 *et seq.* are deficient. Specifically, Plaintiff failed to give Defendant fair notice of the facts and circumstances supporting the alleged Insurance Code violations in the Petition. As a result, Plaintiff should be required to file an amended pleading which sets forth facts and evidence in support of Plaintiff's claims for Defendant's alleged Insurance Code violations, as well as the alleged damages.

### Plaintiff's Claim Under DTPA

Defendant specially excepts to paragraphs 12, 78 and 79 of Plaintiff's Original Petition because Plaintiff's claims regarding Defendant's alleged violations of TEX. BUS. & COM. CODE § 17.46(b) (the "DTPA") are deficient. Specifically, Plaintiff failed to give Defendant fair notice of the facts and circumstances supporting the alleged DTPA violations in the Original Petition.

4

10/01/2015 06:35 FAX 2146981101          Wilson Elser                        ☑049/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 84 of 171   PageID 230
Case 5:15-cv-00201-C   Document 1-1   Filed 09/30/15   Page 40 of 47   PageID 48

Further, Plaintiff fails to plead any facts that show Defendant allegedly acted knowingly. As a result, Plaintiff should be required to file an amended pleading which sets forth facts and evidence in support of Plaintiff's claim for Defendant's alleged DTPA violations, as well as the alleged damages.

### Plaintiff's Claims for Fraud

Defendant specially excepts to paragraphs 12, 80, 81 and 82 of Plaintiff's Original Petition wherein Plaintiff vaguely alleges that Defendant committed fraud. Plaintiff failed to provide fair notice of the alleged acts and/or omissions by Defendant that form the basis of Plaintiff's fraud claims or facts supporting Plaintiff's alleged damages caused by or resulting from any act or omission by Defendant.

### Prayer

Defendant, EAGLE ADJUSTING SERVICES, INC., respectfully prays that the Court will sustain each and all of the foregoing Special Exceptions, that Plaintiff take nothing by reason of his suit herein, and that Defendant recovers its costs incurred herein.

5

10/01/2015 06:36 FAX 2146981101          Wilson Elser                    ☑050/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 85 of 171  PageID 231
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 41 of 47  PageID 49

Respectfully submitted,

Dykema Cox Smith
112 East Pecan, Suite 1800
San Antonio, Texas 78205
210.554.5500
210.226.8395 (Fax)

By: _/s/ Brett Schouest_
   Brett W. Schouest
   State Bar No. 17807700
   bschouest@dykema.com
   Larissa S. Fields
   State Bar No. 24060551
   lfields@dykema.com
   Rachel Skinner
   State Bar No. 24085588
   rskinner@dykema.com

*Attorneys for Defendant, Eagle Adjusting Services, Inc.*

6

10/01/2015 08:38 FAX 2146981101    Wilson Elser    ☑051/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 86 of 171  PageID 232
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 42 of 47  PageID 50

## CERTIFICATE OF SERVICE

I certify that pursuant to the Texas Rules of Civil Procedure, a true and correct copy of

the foregoing document was sent by email to the following counsel of record on the 18th day of

September 2015:

Provost Umphrey Law Firm, LLP
David P. Wilson
DWison@pulf.com
490 Park Street, Suite 100
Beaumont, Texas 77701

Chad T Wilson Law Firm PLLC
Chad T. Wilson
CWilson@cwilsonlaw.com
Kimberly N. Blum
KBlum@cwilsonlaw.com

*Attorney for Plaintiff, Chris Wilson,*
*d/b/a Mr. Wilson Plumbing*

Matthew E. Ritchie
matt@mritchielaw.com
2449 South Willis, Suite 200
Abilene, Texas 79605
*Attorney for Defendant, Cam Fannin*
*Insurance Agency*

                                    */s/ Rachel Skinner*
                                    Rachel R. Skinner

7

10/01/2015 06:36 FAX    2146981101         Wilson Elser                    052/071

# EXHIBIT E

10/01/2015 06:36 FAX 2146981101          Wilson Elser          ☑053/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 88 of 171  PageID 234
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 44 of 47  PageID 52

Filed 9/21/2015 9:54:29 AM
Barbara Sucsy
District Clerk
Lubbock County, Texas

NO. 2015-517,181

KAP

| | | |
|---|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiff, | §<br>§ | |
| VS. | §<br>§<br>§ | LUBBOCK COUNTY, TEXAS |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC. AND CAM FANNIN INSURANCE AGENCY, INC., | §<br>§<br>§<br>§<br>§ | |
| Defendants. | § | 237TH JUDICIAL DISTRICT |

## DEFENDANT UNION INSURANCE COMPANY'S
## ANSWER TO PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Union Insurance Company (hereinafter "Defendant") and files its Original Answer to Plaintiff's Original Petition in the above-referenced matter, and in support thereof would respectfully show the Court as follows:

### I.
### GENERAL DENIAL

1.    Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant denies each and every allegation and cause of action in Plaintiff's Original Petition and any subsequent petitions filed hereafter. Defendant further reserves the right to plead further and in greater particularity as the case progresses should it need to do so.

### II.
### AFFIRMATIVE DEFENSES

2.    Plaintiff's First Amended Original Petition fails to state a claim against Defendant upon which relief can be granted.

3.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate,

10/01/2015 08:36 FAX 2146981101    Wilson Elser    @054/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 89 of 171  PageID 235
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 45 of 47  PageID 53

minimize, or avoid the damages he sustained, and Plaintiff's recovery, if any, must be reduced accordingly.

4.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to meet all conditions precedent to the recovery he now seeks under Policy No. CNA 4534974 – 13 ("Policy").

5.     Plaintiff's claims are limited, in whole or in part, by the Policy's Valuation Loss Condition, which limits Defendant's liability under the Policy to actual cash value as of the time of loss or damage unless the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2500 or less.

6.     Plaintiff's claim for damage to the roof is limited, in whole or in part, by the Policy's Cosmetic Damage to Roof Coverings Caused by Hail Exclusion, which excludes "cosmetic loss or damage" to the "roof covering" of any building scheduled if such damage is caused by the peril of hail.

7.     Plaintiff's claims are limited, in whole or in part, by the Policy's exclusion for neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

8.     Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of estoppel, waiver, and unclean hands.

9.     Defendant reserves the right to amend and or supplement its affirmative defenses.

## III.
## PRAYER

WHEREFORE, Defendant Union Insurance Company prays that Plaintiff take nothing by reason of its allegations being made against Defendant; that the Court find that Plaintiff take nothing by his claims and causes of action against the Defendant; and that Defendant be granted such other relief, whether general or special, at law or in equity, to which it may show itself justly

10/01/2015 08:37 FAX 2146981101          Wilson Elser                    ☑ 055/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 90 of 171  PageID 236
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 46 of 47  PageID 54

entitled.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By: /s/Michael Beckelman

Michael Beckelman
State Bar No. 24042401
michael.beckelman@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, Texas 77010
Ph. (713) 353-2000
Fx. (713) 785-7780

Lakeisha Forté Wells
State Bar No. 24042237
lakeisha.fortewells@wilsonelser.com
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202
Ph. (214) 698-8047
Fx. (214) 698-1101

**ATTORNEY FOR DEFENDANT:
UNION INSURANCE COMPANY**

10/01/2015 06:37 FAX 2146981101          Wilson Elser          ☑056/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 91 of 171  PageID 237
Case 5:15-cv-00201-C  Document 1-1  Filed 09/30/15  Page 47 of 47  PageID 55

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded

to all known counsel of record in accordance with the Texas Rules of Civil Procedure via facsimile

and/or certified mail, return receipt requested on this 21st day of September, 2015:

*Via facsimile 409.838.8888*
David P. Wilson
Provost Umphrey Law Firm LLP
480 Park Street, Suite 100
Beaumont, Texas 77701

*Via facsimile 281.940.2137*
Chad T. Wilson
Kimberly N. Blum
Chad T Wilson Law Firm PLLC
1322 Space Park Drive, Suite A155
Houston, Texas 77058

> */s/ LaKeisha Forte Wells*
> Lakeisha Forté Wells

10/01/2015 06:37 FAX 2146981101          Wilson Elser                                    ☑057/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 92 of 171  PageID 238
 Case 5:15-cv-00201-C  Document 2  Filed 09/30/15  Page 1 of 5  PageID 62

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING | § § § | |
| VS. | § § | CIVIL ACTION NO. _____ |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC., AND CAM FANNIN INSURANCE AGENCY, INC., | § § § § | |

*Removed From*

## CAUSE NO. 2015-517,181

| | | |
|---|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING | § § | IN THE DISTRICT COURT |
| VS. | § § § | LUBBOCK COUNTY, TEXAS |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC., AND CAM FANNIN INSURANCE AGENCY, INC., | § § § § | 237TH DISTRICT COURT |

## UNION INSURANCE COMPANY'S
## BRIEF IN SUPPORT OF ITS NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant, Union Insurance Company, hereby provides this Brief in Support of its Notice

of Removal.

### I.   FACTUAL BACKGROUND

1.      This is a dispute over the extent of covered damages to property located at 117

82nd Street, Lubbock, Texas 79404 ("Property") caused by storm damage during the term of an

insurance policy, issued by Union.

10/01/2015 06:37 FAX 2146981101    Wilson Elser    ☑058/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 93 of 171   PageID 239
Case 5:15-cv-00201-C   Document 2   Filed 09/30/15   Page 2 of 5   PageID 63

2.    Plaintiff alleges that Defendant Cam Fannin Insurance Agency, Inc. ("Cam Fannin") made misrepresentations regarding during the process of procuring insurance coverage for a building owned by Plaintiff.[1]    Based on these alleged misrepresentations, Plaintiff sues Cam Fannin for fraud and violation of the Texas Deceptive Trade Practices Act ("DTPA") in the procurement of the policy.[2]

3.    In the same action, Plaintiff sues Defendants Union Insurance Company ("Union"), Susan Cooper ("Susan"), and Eagle Adjusting Services, Inc. ("Eagle") because the insured building sustained damage as a result of a severe storm, and these defendants failed to explained coverage issues and failed to reasonably adjust and pay the claim.  Plaintiff alleges claims for breach of contract, violations of the Texas Insurance Code and the DTPA, breach of the duty of good faith and fair dealing ("bad faith"), and fraud against Union for its role in the claim handling process.[3]   He alleges claims for violations of the Texas Insurance Code and the DTPA and fraud against Eagle and Cooper for their role in the claim handling process.[4]

### III.    ARGUMENT AND AUTHORITES

4.    In accordance with Rule 40 of the Texas Rules of Civil Procedure, defendants may be joined together in the same action only if (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) at least one "question of law or fact common to all of them will arise in the action."[5]   This Court describes Rule 40 as follows:

Rule 40(a) thus establishes two requirements for joining claims against multiple

---

[1] Pl. Original Pet. ¶¶14-15; 87.
[2] *Id.* at ¶83-87.
[3] *Id.* at ¶44-61.
4 *Id.* at ¶62-82.
[5] TEX. R. CIV. P. 40(A).

10/01/2015 06:37 FAX  2146981101          Wilson Elser                                    ☑ 059/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 94 of 171  PageID 240
Case 5:15-cv-00201-C  Document 2  Filed 09/30/15  Page 3 of 5  PageID 64

defendants: (1) a "same transaction" requirement and (2) a "common question"
requirement. The "same transaction" requirement is governed by a logical
relationship test that is borrowed from federal law. The "common question"
requirement is satisfied by the presence of a single common question of law or
fact.[6]

"A party who fails to satisfy both requirements may not be joined as a defendant."[7]

5.      In this case, the claims against Defendants Union, Cooper, and Eagle arise out of
separate and distinct transactions or occurrences. At least some facts must be relevant to both
claims for the claims to arise out of the same transaction or occurrence.[8]  The claims against
Defendant Cam Fannin arise out of its alleged wrongdoing during the procurement of the policy,
while the claims against Defendants Union, Cooper, and Eagle arise out of those defendants'
alleged mishandling of Plaintiff's property damage claim at some point thereafter. There are no
facts that are relevant to both sets of claims. As such, the claims against Defendants Union,
Cooper, and Eagle do not arise out of the same transaction or occurrence as the claims against
Defendant Cam Fannin and Plaintiff's claims against Defendant Cam Fannin have been
misjoined with those against Defendants Union, Cooper, and Eagle.

6.      Because the claims against Defendants Union, Cooper, and Eagle are wholly
distinct from, and lack no real connection to, the claims against Defendant Cam Fannin, the
misjoinder of the claims is egregious. Accordingly, Plaintiff's misjoinder of Cam Fannin was
fraudulent and this Court should disregard Cam Fannin's residence for purposes of determining

[6] *Henley v. Meyer*, No. 314-CV-1080-L, 2015 WL 324369, at *2 (N.D. Tex. Jan. 16, 2015) (internal citations omitted).
[7] *Pride Transp., Inc. v. Harbin*, No. 4:10-CV-458-Y, 2010 WL 4314920, at *1 (N.D. Tex. Oct. 26, 2010).
[8] *Blalock Prescription Center, Inc. v. Lopez–Guerra*, 986 S.W.2d 658, 663–64 (Tex. App.—Corpus Christi 1998, no pet.).

10/01/2015 06:38 FAX 2146981101          Wilson Elser                                    ☑ 060/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 95 of 171  PageID 241
Case 5:15-cv-00201-C  Document 2  Filed 09/30/15   Page 4 of 5  PageID 65

whether complete diversity of citizenship exists.[9]

## IV.    CONCLUSION AND PRAYER

7.    As demonstrated herein, the claims against Defendants Union, Cooper, and Eagle do not arise out of the same transaction or occurrence as the claims against Defendant Cam Fannin. Moreover, the claims against Defendants Union, Cooper, and Eagle are wholly distict from, and lack no real connection to, the claims against Defendant Cam Fannin. Therefore, Plaintiff's claims against Defendant Cam Fannin have been misjoined with those against Defendants Union, Cooper, and such misjoinder of the claims is egregious. Since Plaintiff is a citizen of Texas, Union is a citizen of Iowa, Cooper is a citizen of Arizona, and Eagle is a citizen of Indiana, and because Cam Fannin has been improperly joined, diversity of citizenship exists among the parties. Accordingly, this Court should find that Defendant Massey was improperly joined and his citizenship cannot be relied upon to defeat this Court's diversity jurisdiction.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP**

By: /s/ Michael S. Beckelman
Michael S. Beckelman
Attorney In Charge
State Bar No. 24042401
michael.beckelman@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, Texas 77010
Ph. (713) 353-2000
Fx. (713) 785-7780

**ATTORNEYS FOR DEFENDANT:
UNION INSURANCE COMPANY**

---

[9] *Henley*, 2015 WL 224369, at *5.

2108251v.1

Page | 4

10/01/2015 06:38 FAX  2146981101          Wilson Elser                                    ☑ 061/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 96 of 171  PageID 242
Case 5:15-cv-00201-C  Document 2  Filed 09/30/15  Page 5 of 5  PageID 66

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served on all counsel in accordance with the Federal Rules of Civil Procedure via certified mail, return receipt requested and/or via facsimile on the 30th day of September, 2015:

*Via facsimile 409.838.8888*
David P. Wilson
Provost Umphrey Law Firm LLP
480 Park Street, Suite 100
Beaumont, Texas 77701

*Via facsimile 281.940.2137*
Chad T. Wilson
Kimberly N. Blum
Chad T Wilson Law Firm PLLC
1322 Space Park Drive, Suite A155
Houston, Texas 77058

*Via facsimile 210.226.8395*
Brett Schouest
Larissa Fields
Rachel Skinner
DYKEMA GOSSETT PLLC
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205

*Via facsimile 888.792.5142*
Matthew E. Ritchie
Matthew E. Ritchie Attorney
2449 South Willis, Suite 200
Abilene, TX 79605

Lakeisha Forte Wells

10/01/2015 06:38 FAX 2146981101      Wilson Elser      ☑062/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 97 of 171   PageID 243
Case 5:15-cv-00201-C   Document 1-2   Filed 09/30/15   Page 1 of 1   PageID 56

JS 44-TXND  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Chris Wilson d/b/a Mr. Wilson Plumbing

**(b)** County of Residence of First Listed Plaintiff  Lubbock, Texas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David P. Wilson, Provost Umphrey Law Firm LLP, 490 Park Street, Suite 100, Beaumont, TX 7701, (409) 835-6000

## DEFENDANTS

Union Insurance Company, Susan Cooper, Eagle Adjusting Services, Inc., and CAM Fannin Insurance Agency, Inc.

County of Residence of First Listed Defendant  Iowa
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Michael S. Beckelman, LaKeisha Forte Wells, Wilson Elser Moskowitz Edelman & Dicker, LLP, 901 Main Street, Suite 4800, Dallas, Texas 75202, (214) 698-8000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

(nature of suit table — categories: CONTRACT, TORTS, FORFEITURE/PENALTY, BANKRUPTCY, OTHER STATUTES)

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332, 1441 and 1446
Brief description of cause:
breach of contract, violations of TX Insurance Code and DTPA, breach of the duty of good faith, fair dealing, fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 200,000.00
CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions):*
JUDGE                    DOCKET NUMBER

DATE  9-30-15
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

10/01/2015 06:39 FAX 2146981101    Wilson Elser                    ☑063/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 98 of 171  PageID 244
Case 5:15-cv-00201-C  Document 1-3  Filed 09/30/15  Page 1 of 5  PageID 57

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| CHRIS WILSON d/b/a MR. WILSON PLUMBING | § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| UNION INSURANCE COMPANY, SUSAN COOPER, EAGLE ADJUSTING SERVICES, INC., AND CAM FANNIN INSURANCE AGENCY, INC., | § § § § | |

## SUPPLEMENTAL CIVIL COVER SHEET

Defendant Union Insurance Company ("Defendant") files this Supplemental Civil Cover

Sheet, and respectfully state as follows:

### 1.    State Court Information:

Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

| Court | Case Number |
|---|---|
| 237th Judicial District, Lubbock County, TX | 2015-517.181 |

### 2.    Style of the Case:

Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Cross-claimant(s) and Third-Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code.)

10/01/2015 08:39 FAX 2146981101    Wilson Elser    ☑064/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 99 of 171  PageID 245
Case 5:15-cv-00201-C  Document 1-3  Filed 09/30/15  Page 2 of 5  PageID 58

| Party and Party Type | Attorney(s) |
|---|---|
| Chris Wilson d/b/a Mr. Wilson Plumbing<br>*Plaintiff* | David P. Wilson<br>State Bar No. 21672700<br>PROVOST UMPHREY LAW FIRM, LLP<br>490 Park St., Suite 100<br>Beaumont, TX 77701<br>409.835.6000<br>409.838.8888 (*facsimile*) |
| | Chad T. Wilson<br>State Bar No. 24079587<br>Kimberly N. Blum<br>State Bar No. 24092148<br>CHAD T. WILSON LAW FIRM PLLC<br>1322 Space Park Drive, Suite A155<br>Houston, TX 77025<br>832.415.1432<br>281.940.2137 |
| Union Insurance Company<br>*Defendant* | Michael S. Beckelman<br>State Bar No. 24042401<br>WILSON ELSER MOSKOWITZ<br> EDELMAN & DICKER, L.L.P<br>901 Main Street, Suite 4800<br>Dallas, TX 75202-3758<br>214.698.8000<br>214.689.1101 (*facsimile*) |
| Eagle Adjusting Services, Inc.<br>*Defendant* | Brett Schouest<br>State Bar No.<br>Larissa Fields<br>State Bar No.<br>Rachel Skinner<br>State Bar No.<br>DYKEMA GOSSETT PLLC<br>112 E. Pecan Street, Suite 1800<br>San Antonio, TX 78205<br>210.554.5269<br>210.226.8395 |
| Cam Fannin Insurance Agency, Inc.<br>*Defendant* | Matthew E. Ritchie<br>State Bar No.<br>MATTHEW E. RITCHIE ATTORNEY<br>2449 South Willis, Suite 200 |

10/01/2015 06:39 FAX 2146981101          Wilson Elser                    ☑085/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 100 of 171   PageID 246
Case 5:15-cv-00201-C   Document 1-3   Filed 09/30/15   Page 3 of 5   PageID 59

Abilene, TX 79605
325.692.1107
888.792.5142 (*facsimile*)

3.  **Jury Demand:**

    Was a Jury Demand made in State Court?          Yes

    If "*Yes*," by which party and on what date?

    Chris Wilson, Plaintiff                         8/25/15
    Party                                           Date

4.  **Answer:**

    Was an Answer made in State Court?              Yes

    If "*Yes*," by which party and on what date?

    Eagle Adjusting Services, Inc.                  9/3/15
    CAM Fannin Insurance Agency, Inc.               9/18/15
    Union Insurance Company                         9/21/15
    Party                                           Date

5.  **Unserved Parties:**

    The following parties have not been served at the time this case was removed:

    | Party | Reason(s) for No Service |
    |-------|--------------------------|
    | Susan Cooper | Unknown |

6.  **Nonsuited, Dismissed or Terminated Parties:**

    Please indicate any changes from the style on the State Court papers and the reason for
    that change:

    | Party | Reason |
    |-------|--------|
    | None. | |

7.  **Claims of the Parties:**

    The filing party submits the following summary of the remaining claims of each party in
    this litigation:

10/01/2015 06:39 FAX 2146981101     Wilson Elser     ☑068/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 101 of 171   PageID 247
Case 5:15-cv-00201-C   Document 1-3   Filed 09/30/15   Page 4 of 5   PageID 60

| Party | Claim(s) |
|---|---|
| Chris Wilson d/b/a Mr. Wilson Plumbing *Plaintiff* | Plaintiff alleges that Cam Fannin made misrepresentations regarding during the process of procuring insurance coverage for a building owned by Plaintiff. Based on these alleged misrepresentations, Plaintiff sues Cam Fannin for fraud and violation of the Texas Deceptive Trade Practices Act ("DTPA") in the procurement of the policy. Plaintiff also sues Defendants Union, Cooper, and Eagle because the insured building sustained damage as a result of a severe storm, and these defendants failed to explained coverage issues and failed to reasonably adjust and pay the claim. Plaintiff alleges claims for breach of contract, violations of the Texas Insurance Code and the DTPA, breach of the duty of good faith and fair dealing ("bad faith"), and fraud against Union for its role in the claim handling process. He alleges claims for violations of the Texas Insurance Code and the DTPA and fraud against Eagle and Cooper for their role in the claim handling process. |
| Union Insurance Company, Susan Cooper, Eagle Adjusting Services, Inc., and CAM Fannin Insurance Agency, Inc. *Defendants* | Defendants assert a general denial as to each and every one of Plaintiffs' claims. |

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, L.L.P.**

By: _/s/ Michael S. Beckelman_____

Michael S. Beckelman
State Bar No. 24042401
909 Fannin St., Suite 3300
Houston, TX 77010
(713) 353-2000
(713) 785-7780 (*facsimile*)
michael.beckelman@wilsonelser.com

**ATTORNEY FOR DEFENDANT UNION INSURANCE COMPANY**

10/01/2015 06:40 FAX 2146981101 Wilson Elser ☑067/071

Case 5:15-cv-00201-C Document 7 Filed 10/30/15 Page 102 of 171 PageID 248
Case 5:15-cv-00201-C Document 1-3 Filed 09/30/15 Page 5 of 5 PageID 61

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served on all counsel in accordance with the Federal Rules of Civil Procedure via certified mail, return receipt requested and/or via facsimile on the 30th day of September, 2015:

*Via facsimile 409.838.8888*
David P. Wilson
Provost Umphrey Law Firm LLP
480 Park Street, Suite 100
Beaumont, Texas 77701

*Via facsimile 281.940.2137*
Chad T. Wilson
Kimberly N. Blum
Chad T Wilson Law Firm PLLC
1322 Space Park Drive, Suite A155
Houston, Texas 77058

*Via facsimile 210.226.8395*
Brett Schouest
Larissa Fields
Rachel Skinner
DYKEMA GOSSETT PLLC
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205

*Via facsimile 888.792.5142*
Matthew E. Ritchie
Matthew E. Ritchie Attorney
2449 South Willis, Suite 200
Abilene, TX 79605

Lakeisha Forté Wells

10/01/2015 06:40 FAX 2146981101     Wilson Elser     ☑068/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15  Page 103 of 171  PageID 249
Case 5:15-cv-00201-C  Document 3  Filed 09/30/15  Page 1 of 4  PageID 67

## Wells, LaKeisha Forte

| | |
|---|---|
| **From:** | Skinner, Rachel [RSkinner@dykema.com] |
| **Sent:** | Wednesday, September 30, 2015 8:33 PM |
| **To:** | Wells, LaKeisha Forte |
| **Cc:** | Schouest, Brett; Sanchez Fields, Larissa |
| **Subject:** | RE: Chris Wilson d/b/a Mr. Wilson Plumbing v. Union Insurance Co, et al - NOTICE OF REMOVAL TO BE FILED TONIGHT |

LaKeisha,

We consent to the removal. Thank you.

Rachel R. Skinner
Associate

rskinner@coxsmith.com
210 554 5382 direct

COX SMITH
112 E. Pecan Street | Suite 1800
San Antonio, Texas 78205
210 554 5500 tel
210 226 8395 fax
210 716 4821 mobile

-----Original Message-----
**From:** Wells, LaKeisha Forte [LaKeisha.ForteWells@wilsonelser.com]
**Sent:** Wednesday, September 30, 2015 08:08 PM Central Standard Time
**To:** Schouest, Brett; Skinner, Rachel; Sanchez Fields, Larissa; 'matt@ritchielaw.com'
**Subject:** Chris Wilson d/b/a Mr. Wilson Plumbing v. Union Insurance Co, et al - NOTICE OF REMOVAL TO BE FILED TONIGHT

Good evening all,

My firm represents Union Insurance in the above-referenced case. We are preparing to file a Notice of removal and our deadline is tonight. We were hoping to obtain your consent to the removal so we can proceed with the filing. Can you please shoot me a quick email to confirm your consent to removal?

Thanks in advance,

LaKeisha Forte Wells
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
Bank of America Plaza - 901 Main Street, Suite 4800
Dallas, TX 75202-3758
214.698.8047 (Direct)
214.698.8000 (Main)

1

10/01/2015 06:40 FAX  2146981101        Wilson Elser                    ☑069/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 104 of 171   PageID 250
Case 5:15-cv-00201-C   Document 3   Filed 09/30/15   Page 2 of 4   PageID 68

214.698.1101 (Fax)
lakeisha.fortewells@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.


For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.
*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged,
confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If
you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me
immediately. Neither this information block, the typed name of the sender, nor anything else in this message is
intended to constitute an electronic signature unless a specific statement to the contrary is included in this
message.

10/01/2015 06:41 FAX  2146981101          Wilson Elser                    ☑070/071

Case 5:15-cv-00201-C   Document 7   Filed 10/30/15   Page 105 of 171   PageID 251
Case 5:15-cv-00201-C   Document 3   Filed 09/30/15   Page 3 of 4   PageID 69

## Wells, LaKeisha Forte

| | |
|---|---|
| **From:** | Matt Ritchie [matt@mritchielaw.com] |
| **Sent:** | Wednesday, September 30, 2015 10:36 PM |
| **To:** | Wells, LaKeisha Forte |
| **Subject:** | Re: FW: Chris Wilson d/b/a Mr. Wilson Plumbing v. Union Insurance Co, et al - NOTICE OF REMOVAL TO BE FILED TONIGHT |

Fannin consents to removal.

- Matt Ritchie

Matthew E. Ritchie
attorney & counselor
2449 South Willis, Suite 200
Abilene, Texas 79605
(325) 692-1107
matt@mritchielaw.com
LinkedIn

NOTICE: This email and attachments, if any, may contain information that is confidential, privileged, and/or attorney work product. If you are not the intended recipient, please do not use or disseminate the information. Instead, immediately notify me by replying to this email. Also, please permanently delete this email and any attachments. Receipt by anyone other than the intended recipient(s) is not a waiver of any privilege, including the attorney-client and work product privileges.

On Wed, Sep 30, 2015 at 10:32 PM, Wells, LaKeisha Forte <LaKeisha.ForteWells@wilsonelser.com> wrote:

Matt,

It appears that I sent the email below to the wrong email address. Please advise confirm your consent to removal.

LaKeisha Forte Wells
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
Bank of America Plaza - 901 Main Street, Suite 4800
Dallas, TX 75202-3758
214.698.8047 (Direct)
214.698.8000 (Main)
214.698.1101 (Fax)
lakeisha.fortewells@wilsonelser.com

1

10/01/2015 06:41 FAX 2146981101          Wilson Elser                    ⚠ 071/071

Case 5:15-cv-00201-C  Document 7  Filed 10/30/15   Page 106 of 171  PageID 252
Case 5:15-cv-00201-C  Document 3  Filed 09/30/15   Page 4 of 4  PageID 70

**From:** Wells, LaKeisha Forte
**Sent:** Wednesday, September 30, 2015 8:08 PM
**To:** 'Brett W. Schouest (bschouest@dykema.com)'; 'Rachel R. Skinner (rskinner@dykema.com)'; 'lfields@dykema.com'; 'matt@ritchielaw.com'
**Subject:** Chris Wilson d/b/a Mr. Wilson Plumbing v. Union Insurance Co, et al - NOTICE OF REMOVAL TO BE FILED TONIGHT
**Importance:** High


Good evening all,


My firm represents Union Insurance in the above-referenced case. We are preparing to file a Notice of removal and our deadline is tonight. We were hoping to obtain your consent to the removal so we can proceed with the filing. Can you please shoot me a quick email to confirm your consent to removal?


Thanks in advance,


LaKeisha Forte Wells
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
Bank of America Plaza - 901 Main Street, Suite 4800
Dallas, TX 75202-3758
214.698.8047 (Direct)
214.698.8000 (Main)
214.698.1101 (Fax)
lakeisha.fortewells@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.

# EXHIBIT C

**AI CL BN R 01 00**

# **RENEWAL**

Policy No.:  ___CNA 4534974 - 14___                Cam Fannin Insurance Agency, Inc

Policy Period:   ___09/17/2014___  to  ___09/17/2015___          Processed On:   ___09/12/2014___

Total Premium:   ___$2,445___                       Processor Id:   ___kmason___

                                    This policy is:   __x__   Direct Bill      __10__   Pay Plan
                                                     _____   Agency Billed

Chris Wilson
dba Mr Wilson Plumbing
PO Box 65541
Lubbock, TX 79464

Chris Wilson
dba Mr Wilson Plumbing
CNA 4534974-14
09/17/2014

**CL PN 01 47 01 14**

# POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, (the "Act"), that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your _____ NEW or __X__ RENEWAL policy is affected as follows:

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, for calendar 2014 the United States Government generally reimburses 85% (for 2015 and beyond, percentages will be determined by Congress if the law is extended) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the act, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

For property located in standard fire policy states there are state statutory exceptions covering certain fire losses if you decline coverage for acts of terrorism defined under the Act.  If an act of terrorism certified under the act results in fire, we are required to pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage by fire to covered property and is subject to any limitations of any terrorism exclusion, or inapplicability or omission of a terrorism exclusion.  This notice does not serve to create coverage for any loss which would otherwise be excluded under your policy.

The portion of your premium that is attributable to coverage for direct loss or damage that is caused by an act of terrorism certified under the act and where fire ensues in a statutory standard fire policy state (fire following terrorism) is  $0_____, and does not include any charges for the portion of losses covered by the United States Government under the Act.  Note, this premium is applied to your policy regardless if you accept or decline coverage for "acts of terrorism" below.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| | I hereby elect to purchase terrorism coverage, subject to the limitations of the "Act" for acts of terrorism as defined by the "Act" for**: (A)** a prospective premium of **$**  1_____  through 12/31/2014, and **(B)** an estimated premium of $  2_____  for the period beyond 12/31/2014 (both including the fire following premium above, if applicable.) |
| | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

**Possibility Of Additional Or Return Premium.**  The premium for certified acts of terrorism coverage is calculated based in part on federal participation in payment of terrorism losses as set forth in the "Act".  The federal program

established by the "Act" is scheduled to terminate at the end of 12/31/2014 unless extended by the Federal Government.  If the federal program terminates or if the level of federal participation changes, the estimated premium shown in **(B)** above may change.

If the policy contains a Conditional Exclusion Of Terrorism endorsement, continuation of the coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion.  If the policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue, unless previously rejected by you.  In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** above and will either charge additional premium or refund excess premium, if indicated.  If we notify you of an additional premium charge, such additional premium will be due as specified in the notice.

| | |
|---|---|
| _____ | Continental Western Insurance Company |
| Policyholder/Applicants Signature | Insurance Company |
| _____ | CNA 4534974 - 14 |
| Print Name | Quotation/ Policy Number |
| _____ | |
| Date | |

CL PN 01 87 01 14

# Conditional Exclusion of Terrorism (Relating to Disposition of Federal Terrorism Risk Insurance Act)

## NOTICE TO POLICYHOLDERS

## POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE

This notice has been prepared in conjunction with the **POTENTIAL** implementation of changes related to the coverage of terrorism under your policy (meaning the policy period which begins in 2014). This Notice does not form a part of your insurance contract.  It is designed to alert you to coverage restrictions and to other provisions in certain terrorism endorsement(s) in this policy.  If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) will prevail.

**Please carefully read your policy, including the endorsements attached to your policy.**

The Terrorism Risk Insurance Act, as revised and extended by the Terrorism Risk Insurance Extension Act of 2005, and again by the Terrorism Risk Insurance Program Reauthorization Act of 2007, established a program (Terrorism Risk Insurance Program) within the Department of Treasury, under which the Federal Government shares, with the insurance industry, the risk of loss from future terrorist attacks.  That Program is scheduled to terminate at the end of December 31, 2014 unless renewed, extended or otherwise continued by the Federal Government.

Your policy (meaning the policy period which begins in 2014) will become effective (or will be renewed) while the Terrorism Risk Insurance Program (TRIP) is still in effect, but prior to a decision by the Federal Government regarding any continuation or extension of it.  If TRIP is terminated, or is extended with certain changes, during the term of your policy, the treatment of terrorism coverage under your policy will change.  Please refer to the Conditional Terrorism endorsement(s) which has been attached to your policy for specific language and conditions.

**PLEASE CONTACT YOUR AGENT FOR ASSISTANCE WITH QUESTIONS REGARDING THESE CHANGES OR OTHER INSURANCE MATTERS.**

Chris Wilson
dba Mr Wilson Plumbing
4534974 - 14
09/17/2014

**CL PN 02 49 01 14**

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the Act), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events.

Under the formula, for calendar year 2014, the United States Government generally reimburses 85% (for 2015 and beyond, percentages will be determined by Congress if the law is extended) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism as defined in the Act, is

**(A)** $1          through 12/31/2014, and **(B)** an estimated premium of     **$** 2          for the period beyond
12/31/2014 and does not include any charges for the portion of losses covered by the United States Government under the Act.

**Possibility Of Additional Or Return Premium.**  The premium for certified acts of terrorism coverage is calculated based in part on federal participation in payment of terrorism losses as set forth in the "Act".  The federal program established by the "Act" is scheduled to terminate at the end of 12/31/2014 unless extended by the Federal Government.  If the federal program terminates or if the level of federal participation changes, the estimated premium shown in **(B)** above may change.

If the policy contains a Conditional Exclusion Of Terrorism endorsement, continuation of the coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion.  If the policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue, unless previously rejected by you.  In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** above and will either charge additional premium or refund excess premium, if indicated.  If we notify you of an additional premium charge, such additional premium will be due as specified in the notice.

Name of Insurer:     Continental Western Insurance
Company
Policy Number:     CNA  4534974 - 14

**CL PN 03 29 01 14**



**Named Insured and Address**

Chris Wilson
PO Box 65541
Lubbock TX 79464

**Agent Name, Address, Phone**

Cam Fannin Insurance Agency, Inc
PO Box 6745
Lubbock TX 79493-6745

(806) 747-4422

**Policy No.**  4534974 - 14          **Issued by**  Continental Western
Insurance Company

*Welcome to Union Standard Insurance Group!*

*On behalf of our employees and the agents who represent US, we would like to thank you for selecting us as your insurance provider. The insurance buying decision can be a difficult one. Once made however, you should feel confident in the people and resources you have selected.*

*As a regional group of insurance companies, we are committed to satisfying the needs of our agents and our policyholders and will strive to exceed your service expectations. Thank you for placing your business through an independent agent and for choosing Union Standard Insurance Group.*

*Keith Mitchell*
*President*



**Union Standard Insurance Group on behalf of**
Acadia Insurance Company · Continental Western Insurance Company · Firemens Insurance Company of Washington, D.C. ·
Tri-State Insurance Company of Minnesota ·Union Insurance Company · Union Standard Lloyds
Refer to the policy for the applicable Insurer, each of which has sole financial responsibility for its own products and services

**THIS NOTICE SUMMARIZES CHANGES TO YOUR POLICY.PLEASE READ IT CAREFULLY**

# NOTICE TO POLICYHOLDER

# EXCLUSION - COSMETIC DAMAGE TO ROOF COVERINGS CAUSED BY HAIL

This notice has been prepared in conjunction with the implementation of an additional exclusion endorsement which may not have been part of your previous policy.  It contains a brief synopsis of any significant restrictions and clarifications of coverage that have been made in each of the policy forms and/or endorsements shown below.  Not every coverage form or endorsement referenced below may be applicable to your policy.

This notice is a summary only.  No coverage is provided by this summary, nor can it be construed to replace any provision of the actual endorsement or your policy. If there is a conflict between the form or endorsement provisions and this summary, THE FORM AND ENDORSEMENT PROVISIONS SHALL PREVAIL.

**Please read your policy, and the endorsements attached to your policy, carefully.**

**CL CP 99 07 02 12, Exclusion  Cosmetic Damage to Roof Coverings Caused by Hail** (Causes of Loss - Basic Form, Causes of Loss - Broad Form, Causes of Loss - Special Form)

When this endorsement is attached to your policy, coverage is excluded for cosmetic loss or damage to the roof covering of any scheduled building if such damage is caused by the peril of hail.

Coverage remains for hail damage to that portion of the roof covering that will allow the penetration of water or results in the failure of the roof covering to perform its intended function to keep out the elements over an extended period of time

*Other insurance companies may or may not have this exclusion and/or limitation in their current policies*

**PLEASE CONSULT YOUR AGENT FOR ASSISTANCE WITH QUESTIONS REGARDING THESE CHANGES OR OTHER INSURANCE MATTERS.**

# PRIVACY NOTICE

<u>Continental Western Insurance Company</u> (the "Company"), a member company of the W.R. Berkley Corporation ("Berkley") group of companies and each other member of the Berkley group of companies ("Affiliates")understands our customers' concern about privacy of their information collected by the Company. Our Company is dedicated to protecting the confidentiality and security of nonpublic personal information we collect about our customers in accordance with applicable laws and regulations. This notice refers to the Company by using the terms "us," "we," or "our." This notice describes our privacy policy and describes how we treat the nonpublic personal information about our customers that we receive from them ("Information").

## Why We Collect and How We Use Information.

We collect and use Information for business purposes with respect to our insurance products and services and other business relations involving our customers. We gather this Information to evaluate your request for insurance, to evaluate your insurance claims, to administer, maintain, or review your insurance policy, and to process your insurance transactions. We also accumulate certain information about you as may be required or permitted by law.

Your insurance agent or broker also collects this Information and may use it to help with your overall insurance program or to market additional products and services to you. We may also use Information to offer you other products or services that we or our Affiliates provide.

## How We Collect Information.

Most Information collected by us is provided by you or your insurance agent or broker to us. We obtain Information from (i) applications or other forms submitted by you, your insurance agent or broker or your authorized representatives to us and our Affiliates, and (ii) your transactions with us or our Affiliates. We may also obtain Information from other sources such as (i) consumer reporting agencies, (ii) other institutions or information services providers, (iii) employers, (iv) other insurers, or (v)your family members.

## Information We Disclose

We disclose any Information which we believe is necessary to conduct our business as permitted by applicable law or where required by applicable law. This disclosure may include (i) Information we receive from you on applications or other forms provided to us and our Affiliates, such as names, addresses, social security numbers, assets, employer information, salaries, etc. (ii)Information about your transactions with us and our Affiliates, such as policy overages, premiums, payment history, etc., and (iii) Information we receive from a consumer reporting agency, such as credit worthiness and credit history.

## To Whom We Disclose Information

We may, as permitted or required by applicable law, disclose your Information to nonaffiliated third parties, such as (i) your insurance agent or broker, (ii) independent claims adjusters, (iii) insurance support organizations, (iv) processing companies, (v) actuarial organizations, (vi) law firms, (vii) other insurance companies involved in an insurance transaction with you, (viii) law enforcement, regulatory, or governmental agencies, (ix) courts or parties therein pursuant to a subpoena or court order, (x) businesses with whom we have a marketing agreement, or (xi) our Affiliates.

We may share Information with our Affiliates so that they may offer you products and services from the Berkley group of companies or to analyze our book of business and to consolidate necessary information. We do not disclose Information to other companies or organizations not affiliated with us for the purpose of using Information to sell their products or services to you. For example, we do not sell your name to unaffiliated mail order or direct marketing companies.

## How We Protect Information

We require our employees to protect the confidentiality of Information as required by applicable law. Access to Information by our employees is limited to administering, offering, servicing, processing or maintaining of our products and services. We also maintain physical, electronic and procedural safeguards designed to protect Information. When we share or provide Information to other persons or organizations, we contractually obligate them, if required by law, to treat Information as confidential and conform to our privacy policy and applicable laws and regulations.

**Correction and Access to Information**

Upon our receipt of your written request to us at P.O. Box 152180, Irving, TX 75015-2180, we will, generally, make available Information for your review. If you believe the Information we have about you is incorrect or inaccurate, you may request that we make any necessary corrections, additions or deletions. If we agree with your belief, we will correct our records if required by applicable law. If we do not agree, you may submit to us a short statement of dispute, which we will include in any future disclosure by us of such Information if required by applicable law.

**Requirements for Privacy Notice**

This privacy notice is being provided due to recently enacted federal and state laws and regulations establishing new privacy standards and requires us to provide this privacy policy. For additional information regarding our privacy policy, please write to us at P.O. Box 152180, Irving, TX 75015-2180.

Adopted: June 1, 2001

B IL DS 00 09 07

**Issuing Company:** Continental Western Insurance Company
222 W Las Colinas Blvd.
PO Box 152180
Irving, TX 75015

# COMMERCIAL LINES POLICY
# COMMON POLICY DECLARATIONS

# Renewal

| | |
|---|---|
| **Policy No.:  CNA 4534974 - 14** | Billing Method: Direct Bill |
| Previous Policy No.: 4534974-13 | Payment Plan: 10 |

| **Named Insured Name and Address** | **Agency Name and Address** | 02520 |
|---|---|---|
| Chris Wilson | (806) 747-4422 | |
| dba Mr Wilson Plumbing | Cam Fannin Insurance Agency, Inc | |
| PO Box 65541 | PO Box 6745 | |
| Lubbock, TX 79464 | Lubbock, TX 79493-6745 | |

**POLICY PERIOD**

Policy Period:  From 09/17/2014 to 09/17/2015 at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:**  Residential Plumbing Contractor

**Form of Business:** Individual

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | Premium |
|---|---|
| Commercial Property Coverage Part | $    2,445.00 |
| **TOTAL:** | $    2,445.00 |

**FORMS APPLICABLE TO ALL COVERAGE PARTS**

*See attached "Schedule of Forms and Endorsements"*

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGES FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Countersigned: _____       By: _____
(Date)                                                       (Authorized Representative)

**CL IL SP 60 06 14**

***INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED ON THE DECLARATIONS PAGE***

Administrative Office for the companies listed below:

Union Standard Insurance Group
222 Las Colinas Boulevard West, Suite 1300
Irving, Texas 75039-5433

**ACADIA INSURANCE COMPANY**
23 Commerce Drive
Bedford, New Hampshire 03110
A Stock Company

**Daniel L. Swift, Secretary**

**Douglas Nelson, President**

**CONTINENTAL WESTERN INSURANCE COMPANY**
11201 Douglas Avenue
Urbandale, Iowa    50322
A Stock Company

**John F. Thelen, Secretary**

**Michael G. Connor, President**

**FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C.**
1209 Orange Street
Wilmington, Delaware 18901
A Stock Company

**Laura L. Thorne, Secretary**

**Susan N. Grady, President**

**UNION INSURANCE COMPANY**
11201 Douglas Avenue
Urbandale, Iowa 50322
A Stock Company

**Ty Simmons, Secretary**

**Keith Mitchell, President**

Union Standard Insurance Group on behalf of
Acadia Insurance Company • Continental Western Insurance Company • Firemen's Insurance Company of Washington, D.C.
• Tri-State Insurance Company of Minnesota • Union Insurance Company • Union Standard Lloyds
Refer to the policy for the applicable Insurer, each of which has sole financial responsibility for its own products and services

# TEXAS IMPORTANT NOTICE

| IMPORTANT NOTICE | | AVISO IMPORTANTE |
|---|---|---|
| To obtain information or make a complaint: | | Para obtener informacion o para someter una queja: |
| You may call Continental Western Insurance Company's toll-free telephone number for information or to make a complaint at: | | Usted puede llamar al numero de telefono gratis de Continental Western Insurance Company para informacion o para someter una queja al: |
| **1-800-444-0049** | | **1-800-444-0049** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | | **1-800-252-3439** |
| You may write the Texas Department of Insurance: P. O. Box 149104 Austin, TX 78714-9104 Fax: (512) 475-1771 Web: http://www.tdi.state.tx.us E-mail: ConsumerProtection@tdi.state.tx.us | | Puede escribir al Departamento de Seguros de Texas: P. O. Box 149104 Austin, TX 78714-9104 Fax: (512) 475-1771 Web: http://www.tdi.state.tx.us E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | | **UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

**CL LOC 09 08**

# LOCATION SCHEDULE

Location # 1          117 82nd St
                      Lubbock, TX 79464

**CL IL FS 01 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Policy Number: **CNA 4534974 - 14**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Common Policy

| State* | Number | Edition | Description |
|--------|--------|---------|-------------|
| ALL | B IL DS 00 | 09-2007 | Commercial Lines Policy Common Policy Declarations |
| ALL | CL IL SP 60 | 06-2014 | Signature Page |
| ALL | CL IL 00 10 | 10-2009 | Texas Important Notice |
| ALL | CL IL FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CL LOC | 09-2008 | Location Schedule |
| ALL | IL 00 17 | 11-1998 | Common Policy Conditions |

## Commercial Property Coverage Part

| State* | Number | Edition | Description |
|--------|--------|---------|-------------|
| ALL | CL IL 01 17 | 12-2011 | Data Breach Coverage |
| ALL | IL 00 03 | 09-2008 | Calculation of Premium |
| ALL | IL 02 75 | 09-2007 | Texas Changes - Cancellation And Nonrenewal Provisions For Casualty Lines And Commercial Package Policies |
| ALL | IL 09 52 | 01-2008 | Cap on Losses From Cert Acts of Terrorism |
| ALL | IL 09 95 | 01-2007 | Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act Of 2002) |
| ALL | IL 09 99 | 01-2007 | Disclosure Of Premium And Estimated Premium For Certified Acts Of Terrorism Coverage (Pursuant To Terrorism Risk Insurance Act Of 2002) |

*When the word "ALL" appears in the state column, the form applies to all states on the policy.*

CL IL 01 17 12 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DATA BREACH COVERAGE

This endorsement provides additional coverage under the following:

COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT DEALERS COVERAGE FORM

**SCHEDULE OF COVERAGE LIMITS**

| Coverage | Limits of Insurance |
|---|---|
| Data Breach Coverage | $50,000 |
| Legal Expense Coverage | $5,000 |
| Digital Forensic Expense Coverage | $5,000 |
| Data Breach Coverage Deductible | $1,500 |

Various provisions in this endorsement restrict coverage.  Read the entire endorsement carefully to determine rights, duties, and what is and is not covered.  Throughout this endorsement, "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.  Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **G. Definitions**.

**A. Coverage**

1. We will provide **Data Breach Services**, **Data Breach Expense Coverage**, **Legal Expense Coverage**, and **Digital Forensic Expense Coverage** as described below if all of the following conditions are met:

   a. You suspect you have experienced a "data breach";

   b. Such "data breach" is first discovered by you during the coverage period of this endorsement; and

   c. Such "data breach" is reported to us within 60 days after the date it is first discovered by you.

2. **Data Breach Services**

   The following Breach Response Services will be made available to you through our Designated Service Provider(s) and are not subject to Section **C. Limits of Insurance** or Section **D. Deductible**:

   Consulting services to assist you in:

   a. Determining the severity of the breach;

   b. Determining the remediation services to be offered to breach notification recipients;

   c. Assisting with drafting the breach notification letter;

   d. Determining alternate forms of notice (web-based response or e-mail notification) in breaches that fall outside the regulated threshold levels;

   e. Assessing the need or value of a public relations response; and

   f. Assisting with 3rd party notification requirements and communications including but not limited to State Attorneys General, Departments of Consumer Affairs, Credit Bureaus, and State Police.

3. **Data Breach Expense Coverage**

   We will pay your reasonable and necessary direct expenses incurred for the following covered expenses up to the limit of insurance described in Section **C. Limits of Insurance**:

   a. **Notification to Potentially - Identified Persons**

      We will provide you with expense reimbursement for reasonable costs incurred by you for the printing, mailing, postage and delivery of notification letters sent to "potentially-identified persons" and required third parties following an actual "data breach" and pursuant to any applicable federal and/or state breach notification requirements.

      Reimbursement is limited to the above described expenses and is contingent upon your consultation with us prior to the issuance of any notification/communication to "potentially-identified persons".

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**b. Services to Potentially - Identified Persons**

The following services can be made available to "potentially-identified persons" through our Designated Service Provider:

**(1) Proactive Monitoring Services**

We will provide you with expense reimbursement coverage for costs incurred in providing "proactive monitoring services" to these notification recipients if and when warranted. This service is subject to the "potentially-identified person" enrolling for this service with our Designated Service Provider.

**(2) Help Line**

A toll-free telephone line for "potentially-identified persons" who have questions or require assistance with the "data breach" - including but not limited to:

- Answering questions regarding fraud and fraud prevention;

- Provision of proactive education and alerts via the web;

- Initial credit file activity review when a social security number has been exposed;

- Assistance with placement of Fraud Alerts when a social security number has been exposed; and

- Read and interpret credit reports for any possible fraud indicators when a social security number has been exposed.

**(3) Identity Restoration Case Management**

This consists of services of an identity restoration professional who will assist that "identified person" through the process of correcting credit and other records. Fraud resolution assistance services include but are not limited to:

- Unlimited access to a personal fraud specialist via a custom toll-free number;

- Creation of a Fraud Victim Affidavit;

- Preparation of documents needed for credit grantor notification, and fraud information removal purposes;

- Facilitation of phone calls needed for credit grantor notification, and fraud information removal purposes;

- Systematic notification and communication with any relevant government and private agencies for fraud information removal purposes;

- Guidance in filing a law enforcement report;

- Comprehensive case file creation for insurance and law enforcement;

- Guidance with enrollment in applicable Identity Theft Passport Programs (in states where it is available and in situations where It is warranted);

- Guidance with placement of Credit File Freezes (in situations where it's warranted);

- Provision of general Fraud Alerts, reminders and status checks;

- Review of credit reports for possible fraudulent activity; and

- A full year of service, including follow-up calls.

You agree to consult with our Designated Service Provider prior to offering these services to "identified persons".

**4. Legal Expense Coverage**

We will provide you with expense reimbursement for necessary and reasonable legal costs incurred by you within the first six months following discovery of a "data breach". Reimbursable legal expenses are limited to legal services ensuring that:

**a.** The content and methodology for a Data Breach Notification complies with state and/or federal notification requirements; and

**b.** The process of handling the "data breach" complies with applicable state and/or federal laws.

**Legal Expense Coverage** is limited to these two specific legal services and does not cover reimbursement for any legal costs associated with the defense of any claims, demands, regulatory actions or legal suits filed against you as a result of a "data breach." The most we will pay for **Legal Expense Coverage** is described in paragraph **2.** of Section **C. Limits of Insurance**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**5. Digital Forensic Expense Coverage**

We will provide you with expense reimbursement for necessary and reasonable digital forensic services incurred by you to investigate the magnitude of the "data breach". Reimbursable digital forensic services are limited to services that:

**a.** Determine, based on the facts presented, whether or not an actual data exposure requiring notification pursuant to state and/or federal law has occurred.

**b.** Ascertain who and how many individuals are affected for purposes of meeting notification requirements.

**Digital Forensic Expense Coverage** is limited to these two specific digital forensic services and does not cover reimbursement for any digital forensic services associated with determining the nature or cause of a "data breach" or to fix or remediate digital assets and networks compromised as a result of a "data breach." The most we will pay for **Digital Forensic Expense Coverage** is described in paragraph **3.** of Section **C. Limits of Insurance**. As a condition of this coverage, you agree to utilize our Designated Service Provider or to obtain prior written approval from us prior to utilizing your own service provider.

**B. Exclusions**

We will not pay for costs arising from the following:

**1. Deficiency in Management or Systems**

Investigating or remedying any deficiencies in your employee management, vendor management, internal systems, procedures, computer network/system firewall, and computer network/system antivirus or physical security that may have contributed to a "data breach".

**2. Prior Discovery**

Any "data breach" discovered prior to the inception of this endorsement.

**3. Fraudulent, Dishonest or Criminal Act**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of law by you, any of your partners, directors, executive officers, managing members, or trustees acting alone or in collusion with others; or whether occurring during or outside of the hours of employment.

**4. Intentional Acts**

Your intentional or willful involvement in a "data breach".

**5. Fines, Penalties, Fees or Assessments**

Any "fines, penalties, fees or assessments". This includes but is not limited to fees or surcharges from financial institutions, state or federal regulators, and courts of law.

**6. Defense or Legal Liability**

Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you as a result of a "data breach".

**7. Victim Expenses or Losses**

Costs or losses incurred by a victim of "data breach".

**8. Malicious Code**

Any loss of data from "malicious code".

**9. Threat, Extortion or Blackmail**

Any threat, extortion or blackmail including but not limited to, ransom payments and private security assistance.

**10. Delay, Loss Of Use or Loss Of Market**

Delay, loss of use, loss of existing or prospective markets, diminished value or any other consequential loss.

**11. Contractual Liability**

Legal obligations arising by reason of your assumption of liability in a contract or agreement.

**12. Zero-day exploit(s)**

Any loss of data due to a "zero-day exploit(s)".

**C. Limits Of Insurance**

**1.** The most we will pay for the total of all:

**a. Data Breach Expense Coverage**;

**b. Legal Expense Coverage**; and

**c. Digital Forensic Expense Coverage**;

is the **Data Breach Coverage Limit of Insurance** of $50,000, unless a higher limit of insurance is shown in the Schedule of Coverage Limits.

The **Data Breach Coverage Limit of Insurance** is an annual aggregate limit and is the most we will pay for the total of such covered expenses arising out of all "data breach" events discovered by you during the current annual policy period regardless of the number of "data breach" events.

**2.** Subject to **1.** above, the most that we will pay for **Legal Expense Coverage** is an annual aggregate limit **of** $5,000. This Limit of Insurance is part of, and not in addition to, the **Data Breach Coverage Limit of Insurance.**

**3.** Subject to **1.** above, the most that we will pay for **Digital Forensic Expense Coverage** is an annual aggregate limit of $5,000. This Limit of Insurance is part of, and not in addition to, the **Data Breach Coverage Limit of Insurance.**

**4.** A "data breach" may be first discovered by you in one policy period but cause covered expenses in one or more subsequent policy periods. If so, all covered expenses arising from such "data breach" will be subject to the **Data Breach Coverage Limit of Insurance** applicable to the policy period when the "data breach" was first discovered by you.

**D. Deductible**

All coverages listed in the **SCHEDULE OF COVERAGE LIMITS** are jointly subject to a $1,500 deductible. **Data Breach Services** are not subject to this deductible. The Deductible will apply to each "data breach" covered under this endorsement.

**E. Conditions**

This coverage is subject to the conditions and provisions of the Common Policy Conditions including as amended by any superseding jurisdictional endorsement, the conditions and provisions of the Commercial Property Conditions, and/or the conditions and provisions of the Equipment Dealers Coverage form, not in conflict with this endorsement.

The following conditions also apply:

**1. Coverage Territory**

The "data breach" must involve "private personal data" that was within your care, custody or control within the United States and its territories and commonwealths.

**2. Duties in the Event of a Data Breach**

You must see that the following are done in the event of a "data breach":

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the "data breach". You must report the "data breach" to us within 60 days or earlier of the date you first discover it.

**c.** As soon as possible, provide us and/or our Designated Service Provider, with responses to questions posed concerning the "data breach" event.

**d.** Take all reasonable steps to protect "private personal data" remaining in your care, custody or control.

**e.** Preserve all evidence of the "data breach".

**f.** Permit us to inspect the property and records proving the "data breach".

**g.** When asked send us a signed, sworn statement containing the information we request to investigate the claim.

**h.** Cooperate with us in the investigation and settlement of the claim.

**3. No Benefit to Bailee or Subcontractor**

No person or organization, other than you, having custody of "private personal data" will benefit from this coverage.

**4. Services**

The following conditions apply as respects to any services provided to you or to any "potentially-identified person" or "identified person" by us, our designees or any firm paid for in whole or in part under this endorsement:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** All services may not be available or applicable to all "potentially-identified persons" or "identified persons". For example, "potentially-identified persons" who are minors or foreign nationals may not have credit records that can be provided or monitored.

**c.** We do not warrant or guarantee that the services provided under this endorsement will end or eliminate all problems associated with a covered "data breach".

**5. Service Providers**

**a.** We will only provide **Data Breach Services** reimbursement for **Data Breach Expense Coverages** through our Designated Service Provider(s). Any such services that are provided by any other individual or entity will not be covered by this endorsement except as expressly provided for under subparagraph (c ).

**b.** We will only pay **Legal Expense Coverage** from licensed legal counsel.

**c.** We will suggest service providers. If you prefer to use an alternative service provider, our coverage will be subject to the following limitations:

**(1)** Such alternative service provider must be approved by us; and

**(2)** Our payment for services provided by any alternative service provider will not exceed the amount that we would have paid using the service

Includes copyrighted material of Insurance Services Office, Inc., with its permission

provider we had suggested. You will have a direct relationship with any service provider, including our Designated Service Provider.

**d.** You will have a direct relationship with the Direct Service Provider and any legal counsel used whether paid for in whole or in part under this endorsement. All service providers work for you.

### 6. Time Limits

**a.** You must report a "data breach" to us on or within 60 days of your discovery of the "data breach".

**b.** You have up to one year from the date of reporting a "data breach" to initiate the services provided to you.

**c.** A "potentially-identified person" has up to one year from the date he or she receives notification of a "data breach" to initiate the "proactive monitoring services" offered to him or her.

**d.** Once initiated, the "proactive monitoring services" will continue to be provided to that person for one year.

**e.** Data Breach Counseling Services will be provided by our Designated Service Provider for a period of 12 consecutive months from the inception of the Data Breach Services.

## F. General Conditions

The following conditions are also made part of this endorsement:

### 1. Due Diligence

You agree to exercise due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate computer and internet security;

**b.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "private personal data", including shredding hard copy files and destroying physical media used to store electronic data.

### 2. No Legal Advice Provided

We are not your legal advisor and do not provide legal counsel to you. None of the services we provide under this endorsement constitute legal advice to you by us.

### 3. Subrogation

In the event of any payment hereunder, we shall be subrogated to the extent of any payment to all of your rights of recovery. You agree to execute all papers and do everything necessary to secure such rights, including but not limited to the execution of any documents necessary to enable us to effectively bring suit in your name. You shall do nothing that may prejudice our position or potential or actual rights of recovery. Your obligations regarding subrogation shall survive the expiration, cancellation, or termination of this Policy. With respect to a claim, any amount recovered upon the exercise of any subrogation rights shall be applied as follows in the following order to:

**a.** The repayment of expenses incurred in recovery by exercise of such subrogation rights;

**b.** Damages or claim expenses paid by you in excess of the Limits of Insurance;

**c.** Damages or claim expenses paid by us; and

**d.** Damages or claim expenses paid by you toward the deductible.

## G. Definitions

### 1. "Data breach" means the loss, theft, accidental release or accidental publication of "private personal data" entrusted to you as respects one or more "potentially-identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** "Data breach" includes disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** Your failure to use appropriate safeguards must be accidental and not intentional, reckless or deliberate.

**(2)** Such disposal or abandonment must take place during the time period for which this Data Breach Coverage is effective.

**b.** "Data breach" includes situations where there is a reasonable cause to suspect that such "private personal data" has been stolen, accidentally released or accidentally published, even if there is no firm proof.

**c.** All incidents of "data breach" that are discovered at the same time or arise from the same cause or from a series of similar causes would be considered one "data breach".  All theft of "private personal data" caused by any person or in which that person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach".

**2.** "Fines, penalties, fees or assessments" means any fines, assessments, surcharges, attorneys' fees, court costs or other penalties which you shall be required to pay as a result of "data breach" or pursuant to any contract, law, regulation or order.

**3.** "Identified person" means a "potentially-identified person" who is, or appears to be a victim of "identify theft" that may reasonably have arisen from a covered "data breach".

**4.** "Identity theft" means the fraudulent use of "private personal data".  This includes the fraudulent use of such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

**5.** "Malicious code" means any virus, worm, trojan, bot or any other "malicious code", software, spyware or malware that is, on the date the "data breach" occurred, named and recognized by the CERT Coordination Center, or any industry acceptable third party antivirus, antimalware or other solution that monitors "malicious code" activity.

**6.** "Potentially-identified person" means any person who is your current, former or prospective customer, employee, client, member, owner or officer and whose "private personal data" is lost, stolen, accidentally released or accidentally published by a "data breach" covered under this endorsement. This definition is subject to the following provisions:

**a.** "Potentially-identified person" does not include any business or organization. Only an individual person may be a "potentially-identified person".

**b.** A "potentially-identified person" must have a direct relationship with you.  The following are examples of individuals who do not meet this requirement:

**(1)** If you aggregate or sell information about individuals as part of your business, "potentially-identified persons" do not include the individuals about whom you keep such information.

**(2)** If you store, process, transmit or transport records for another person or entity, "potentially-identified persons" do not include the individuals whose "private personal data" you are storing, processing, transmitting or transporting for another entity.

The above examples are not meant to be all inclusive but are provided as a way to identify those not meeting the requirements of this definition.

**c.** A "potentially-identified person" may reside anywhere in the world.  However, the coverage and services provided under this endorsement are only applicable and available within the United States and Puerto Rico.

**7.** "Private personal data" means personal, non-public information that could be used to uniquely identify an individual and which can be used to commit fraud or other illegal activity involving the credit or identity of a "potentially-identified person".  This includes, but is not limited to, a person's first and last name or first initial and last name in combination with that person's social security number, driver's license number, credit card or banking account number.

"Private personal data" does not mean or include information that is otherwise available to the public, such as names and addresses with no correlated social security numbers or banking account numbers.

**8.** "Proactive monitoring services" means any variation of the following services, if warranted and you offer to provide them to "potentially-identified persons" who contact our Designated Service Provider:

**a.** A credit report;

**b.** Credit monitoring;

**c.** Credit score;

**d.** Public Records monitoring;

**e.** Fraud Monitoring; or

**f.** Other monitoring that may proactively assist in notification of the misuse of an individual's identity or personal information.

"Proactive monitoring services" are warranted when a social security number or a portion of a social security number has been exposed.

9. "Zero-day exploit(s)" is software or code that exploits computer application vulnerabilities that are unknown to the CERT Coordination Center, any industry acceptable third party antivirus, antimalware or other solution that monitors "malicious code" activity or the software developer / hardware manufacturer and utilizes that security hole to carry out an attack. "Zero-day exploit(s)" by definition are not named and recognized by the CERT Coordination Center, or any industry acceptable third party antivirus, antimalware or other solution that monitors "malicious code" activity.

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

  CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
  COMMERCIAL AUTOMOBILE COVERAGE PART
  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  COMMERCIAL INLAND MARINE COVERAGE PART
  COMMERCIAL PROPERTY COVERAGE PART
  CRIME AND FIDELITY COVERAGE PART
  EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
  EQUIPMENT BREAKDOWN COVERAGE PART
  FARM COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
  MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
  OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
  POLLUTION LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 02 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
    FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
    FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
    GLASS COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

 © ISO Properties, Inc., 2006   ☐

The permissible reasons for cancellation are as follows:

**a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(1)** Fraud in obtaining coverage;

**(2)** Failure to pay premiums when due;

**(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

**(4)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

**(5)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**B.** The following condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This Paragraph, **2.,** applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

**a.** The first Named Insured; and

**b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

 © ISO Properties, Inc., 2006 **IL 02 75 09 07** ☐

IL 09 52 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

## A.  Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## B.  Application Of Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

     © ISO Properties, Inc., 2007       ☐

IL 09 95 01 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| The **Exception Covering Certain Fire Losses** (Paragraph **D.**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy: | |
| --- | --- |
| **State(s)** | **Coverage Form, Coverage Part Or Policy** |
| Connecticut, Georgia, Maine, | BOILER AND MACHINERY COVERAGE PART (As Applicable) |
| Massachusetts, New York | COMMERCIAL INLAND MARINE COVERAGE PART (As Applicable) |
| North Carolina, New Jersey, | COMMERCIAL PROPERTY COVERAGE PART (As Applicable) |
| Rhode Island, West Virginia; or | EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM (As Applicable) |
| Virginia (Unless Terrorism Coverage has been Rejected) | FARM COVERAGE PART (As Applicable) |
| Illinois, Iowa, Missouri, Wisconsin | STANDARD PROPERTY POLICY (As Applicable) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Applicability Of The Provisions Of This Endorsement**

1. **The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.**

   a. **The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form, Coverage Part or Policy; or**

 © ISO Properties, Inc., 2005

**b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:**

**(1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or**

**(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or**

**(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.**

**2. If the provisions of this endorsement become applicable, such provisions:**

**a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and**

**b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.**

**3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

**a.** Use or threat of force or violence; or

**b.** Commission or threat of a dangerous act; or

**c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

**a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

© ISO Properties, Inc., 2005

5. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **C.5.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Coverage Part or Policy.

**D. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**E. Application Of Other Exclusions**

1. When the Exclusion Of Terrorism applies in accordance with the terms of **C.1.** or **C.2.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**POLICY NUMBER** CNA 4534974-14

**IL 09 99 01 07**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT)

**SCHEDULE**

---

**SCHEDULE - PART I**

**Terrorism Premium (Certified Acts)**

**(A) Premium through end of year (12/31/2014)**     $ 1

**(B) Estimated Premium beyond the date specified above**     $ 2

(Refer to Paragraph **C.** in this endorsement.)

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

All Coverage Forms other than Commercial Auto, Crime, Farm Multi-Peril or Employment-Practice Liability Coverages.

**Additional information, if any, concerning the terrorism premium:**

The premiums stated above are only estimates and are subject to change because of rounding to the nearest dollar, premium audit or changes made to the policy during its term.

---

**SCHEDULE - PART II**

**Federal share of terrorism losses**     85     **% Year: 2014**

(Refer to Paragraph **B.** in this endorsement.)

**Federal share of terrorism losses**     TBD     **% Year: 2015**

(Refer to Paragraph **B.** in this endorsement.)

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. For losses occurring in 2006, the federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. For losses occurring in 2007, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. If the federal program is extended beyond 2007, the applicable percentage is shown in Part **II** of the Schedule of this endorsement or in the policy Declarations.

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act. The federal program established by the Act is scheduled to terminate at the end of the year specified in Part **I** of the Schedule of this endorsement, unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** in Part **I** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** in Part **I** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

   © ISO Properties, Inc., 2005   **IL 09 99 01 07**

COMMERCIAL PROPERTY
B CP DS 01 10 00

**Issuing Company:** Continental Western Insurance Company

# COMMERCIAL PROPERTY DECLARATIONS

**Policy No.:** CNA  4534974 - 14
Previous Policy No.: 4534974-13

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 02520 |
|---|---|---|
| Chris Wilson | (806) 747-4422 | |
| dba Mr Wilson Plumbing | Cam Fannin Insurance Agency, Inc | |
| PO Box 65541 | PO Box 6745 | |
| Lubbock, TX 79464 | Lubbock, TX 79493-6745 | |

**POLICY PERIOD**

Policy Period:  From 09/17/2014 to 09/17/2015 at 12:01 A.M. Standard Time at your mailing address shown above.

**TOTAL ADVANCE PREMIUM**          $2,445

**DESCRIPTION OF PREMISES AND COVERAGES PROVIDED**

| Description Of Property | Limit | Cause Of Loss | Coinsurance | Valuation | Inflation Guard |
|---|---|---|---|---|---|
| **LOCATION: # 1**  **Deductible:**  **$2,500** | | | | | |
| 117 82nd St | | | | | |
| Lubbock, TX 79464 | | | | | |
| **BUILDING # 1** | | | | | |
| 1 Story Non-Combustible Building | | | | | |
| Occupied As Residential Plumbing Contractor | | | | | |
| Building | 170,000 | BROAD | 80% | ACV | |

KEY:  ACV = Actual Cash Value   AV = Agreed Value   FBV = Functional Building Valuation   RC = Replacement Cost
MR = Monthly Reporting

**COVERAGES APPLICABLE TO ALL LOCATIONS**

Data Breach Coverage                    Limit: $50,000

**MORTGAGE HOLDER(S)**

Location # 1      Building # 1      Happy State Bank
                                     8001 Quaker Ste N
                                     Lubbock, TX 79424

**FORMS APPLICABLE**

*See attached "Schedule of Forms and Endorsements"*

Policy Number: **CNA 4534974 - 14**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

### **Commercial Property**

| State* | Number | Edition | Description |
|---|---|---|---|
| ALL | B CP DS 01 | 10-2000 | Commercial Property Declarations |
| ALL | CL CP FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CL CP 99 07 | 02-2012 | Cosmetic Roof Damage |
| ALL | CP 00 10 | 06-2007 | Building and Personal Property Coverage Form |
| ALL | CP 00 90 | 07-1988 | Commercial Property Conditions |
| ALL | CP 01 40 | 07-2006 | Exclusion of Loss Due to Virus or Bacteria |
| ALL | CP 01 42 | 01-2011 | Texas Changes |
| ALL | CP 10 20 | 06-2007 | Causes Of Loss - Broad Form |
| ALL | CP 10 32 | 08-2008 | Water Exclusion Endorsement |

*When the word "ALL" appears in the state column, the form applies to all states on the policy.*

COMMERCIAP PROPERTY
CL CP 99 07 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - COSMETIC DAMAGE TO
# ROOF COVERINGS CAUSED BY HAIL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

**This endorsement applies only to the following locations:**

| Insured Location | Bldg No. |
|---|---|
| 1 | 1 |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

A.  The following is added under the **EXCLUSIONS AND LIMITATIONS Section** of this Coverage Part or Policy:

**Cosmetic Damage to Roof Coverings Caused by Hail**

We do not pay for "cosmetic loss or damage" to the "roof covering" of any building scheduled above if such damage is caused by the peril of hail.

We do cover hail damage to that portion of the "roof covering" that will allow the penetration of water or results in the failure of the "roof covering" to perform its intended function to keep out the elements over an extended period of time.

B.  The following are added under **DEFINITIONS**:

"Cosmetic loss or damage" means damage to any portion of the roof covering of a building that alters only its physical appearance but does not result in the failure of the roof covering to perform its intended function of keeping out the elements over an extended period of time.

"Roof Covering"means the roofing material exposed to the elements, the underlayments applied for moisture protection, roof doors, roof vents, roof turbines, and all stripping, flashing, and edging required in the replacement of the roofing material or underlayments.

COMMERCIAL PROPERTY
CP 00 10 06 07

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.,** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation Of Coverage form:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

© ISO Properties, Inc., 2007

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

© ISO Properties, Inc., 2007

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss Form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

(1) Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) **Examples**

The following examples assume that there is no Coinsurance penalty.

**EXAMPLE #1**

| | |
|---|---:|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $     500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**EXAMPLE #2**

| | |
|---|---:|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $     500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 30,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

### b. Preservation Of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

### e. Increased Cost Of Construction

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

© ISO Properties, Inc., 2007

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

  **(a)** You were required to comply with before the loss, even when the building was undamaged; and

  **(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

  **(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  **(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

  **(a)** We will not pay for the Increased Cost of Construction:

    **(i)** Until the property is actually repaired or replaced, at the same or another premises; and

    **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  **(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

  **(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

 © ISO Properties, Inc., 2007

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

© ISO Properties, Inc., 2007

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

© ISO Properties, Inc., 2007

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

© ISO Properties, Inc., 2007

## D. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

### EXAMPLE #1

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Building #1: | $ 60,000 |
| Limit of Insurance – Building #2: | $ 80,000 |
| Loss to Building #1: | $ 60,100 |
| Loss to Building #2: | $ 90,000 |

The amount of loss to Building #1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building #1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building #1:

$ 60,100
−     250
$ 59,850 Loss Payable – Building #1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building #2. Loss payable for Building #2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

### EXAMPLE #2

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example #1.

| | |
|---|---|
| Loss to Building #1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building #2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building #1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building #2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

## E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties In The Event Of Loss Or Damage

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4. Loss Payment

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

© ISO Properties, Inc., 2007
□

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

 © ISO Properties, Inc., 2007   □

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE #1 (UNDERINSURANCE)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

© ISO Properties, Inc., 2007

**EXAMPLE #2 (ADEQUATE INSURANCE)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $      250 |
| | The amount of loss is: | $   40,000 |

The minimum amount of insurance to meet your Co-insurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**EXAMPLE #3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location #1: | $  75,000 |
| | Building at Location #2: | $ 100,000 |
| | Personal Property at Location #2: | $  75,000 |
| | | $ 250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations #1 and #2 is: | $ 180,000 |
| | The Deductible is: | $    1,000 |
| | The amount of loss is: | |
| | Building at Location #2: | $  30,000 |
| | Personal Property at Location #2: | $  20,000 |
| | | $  50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

**a.** The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**EXAMPLE**

If:

| | |
|---|---|
| The applicable Limit of Insurance is: | $ 100,000 |
| The annual percentage increase is: | 8% |
| The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $   3,200 |

### 3. Replacement Cost

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

© ISO Properties, Inc., 2007

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

     Copyright, ISO Commercial Risk Services, Inc., 1983, 1987     **CP 00 90 07 88**     □

**COMMERCIAL PROPERTY**
**CP 01 40 07 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

COMMERCIAL PROPERTY
CP 01 42 01 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part is replaced by the term Policy.

**B. Legal Action Against Us**

  **1.** The **Legal Action Against Us** Commercial Property Condition is replaced by the following, except as provided in **B.2.** below:

    **Legal Action Against Us**

    No one may bring a legal action against us under this Coverage Part unless:

    **a.** There has been full compliance with all of the terms of this Coverage Part; and

    **b.** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

  **2.** Paragraph **B.1.** above does not apply to the Legal Action Against Us Loss Condition in the Legal Liability Coverage Form **CP 00 40.**

**C. Appraisal**

  **1.** Except as provided in **C.2.** below, the **Appraisal** Loss Condition in the:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM;
    BUILDERS RISK COVERAGE FORM;
    CONDOMINIUM ASSOCIATION COVERAGE FORM;
    CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM;
    EXTRA EXPENSE COVERAGE FORM;

LEASEHOLD INTEREST COVERAGE FORM;
TOBACCO SALES WAREHOUSES COVERAGE FORM; and
STANDARD PROPERTY POLICY

is replaced by the following:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

 © Insurance Services Office, Inc., 2010   □

2. The **Appraisal** Condition in the:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM; and BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

is replaced by the following:

**Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense and the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

**D.** The provision requiring signed, sworn proof of loss in the **Duties In The Event Of Loss Or Damage** Loss Condition is replaced by the following:

Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**E.** Under the Loss Payment Condition, the provisions pertaining to notice of our intentions and the time period for payment of claims are deleted and replaced by the following:

**1. Claims Handling**

**a.** Within 15 days after we receive written notice of claim, we will:

**(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(2)** Begin any investigation of the claim; and

**(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**b.** We will notify you in writing as to whether:

**(1)** The claim or part of the claim will be paid;

**(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(3)** More information is necessary; or

**(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **b.(1)** through **b.(4)** above, within:

**(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**2.** We will pay for covered loss or damage within five business days after:

**a.** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Coverage Part, we will make payment within five business days after the date you have complied with such terms.

The following paragraphs are added:

**3. Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **E.1.** and **E.2.** above are extended for an additional 15 days.

© Insurance Services Office, Inc., 2010

Catastrophe or Major Natural Disaster means a weather related event which:

**a.** Is declared a disaster under the Texas Disaster Act of 1975; or

**b.** Is determined to be a catastrophe by the State Board of Insurance.

**4.** The term "business day", as used in the Loss Payment Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**F.** The following is added to the **Valuation** Loss Condition:

**Chapter 862 – Subsection 862.053. Policy A Liquidated Demand.** A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. This subsection does not apply to personal property.

**G.** Paragraphs **d.** and **f.** of the **Mortgageholders** Additional Condition are replaced by the following:

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**H.** The following is added to Paragraph **D.1.** in the **Duties In The Event Of Accident, Claim Or Suit** Loss Condition in the Legal Liability Coverage Form:

We will notify the first Named Insured in writing of:

**1.** An initial offer to compromise or settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

**2.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

COMMERCIAL PROPERTY
CP 10 20 06 07

# CAUSES OF LOSS – BROAD FORM

## A. Covered Causes Of Loss

When Broad is shown in the Declarations, Covered Causes of Loss means the following:

1. Fire.

2. Lightning.

3. Explosion, including the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass. This cause of loss does not include loss or damage by:

   a. Rupture, bursting or operation of pressure-relief devices; or

   b. Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water.

4. Windstorm or Hail, but not including:

   a. Frost or cold weather;

   b. Ice (other than hail), snow or sleet, whether driven by wind or not; or

   c. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

5. Smoke causing sudden and accidental loss or damage. This cause of loss does not include smoke from agricultural smudging or industrial operations.

6. Aircraft or Vehicles, meaning only physical contact of an aircraft, a spacecraft, a self-propelled missile, a vehicle or an object thrown up by a vehicle with the described property or with the building or structure containing the described property. This cause of loss includes loss or damage by objects falling from aircraft.

   We will not pay for loss or damage caused by or resulting from vehicles you own or which are operated in the course of your business.

7. Riot or Civil Commotion, including:

   a. Acts of striking employees while occupying the described premises; and

   b. Looting occurring at the time and place of a riot or civil commotion.

8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

   We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

9. Sprinkler Leakage, meaning leakage or discharge of any substance from an Automatic Sprinkler System, including collapse of a tank that is part of the system.

   If the building or structure containing the Automatic Sprinkler System is Covered Property, we will also pay the cost to:

   a. Repair or replace damaged parts of the Automatic Sprinkler System if the damage:

      (1) Results in sprinkler leakage; or

      (2) Is directly caused by freezing.

   b. Tear out and replace any part of the building or structure to repair damage to the Automatic Sprinkler System that has resulted in sprinkler leakage.

   Automatic Sprinkler System means:

   (1) Any automatic fire-protective or extinguishing system, including connected:

      (a) Sprinklers and discharge nozzles;

      (b) Ducts, pipes, valves and fittings;

      (c) Tanks, their component parts and supports; and

      (d) Pumps and private fire protection mains.

   (2) When supplied from an automatic fire-protective system:

      (a) Non-automatic fire-protective systems; and

      (b) Hydrants, standpipes and outlets.

10. Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    a. The cost of filling sinkholes; or

    b. Sinking or collapse of land into man-made underground cavities.

 © ISO Properties, Inc., 2007

**11.** Volcanic Action, meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    **a.** Airborne volcanic blast or airborne shock waves;

    **b.** Ash, dust or particulate matter; or

    **c.** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

This cause of loss does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**12. Falling Objects**

But we will not pay for loss or damage to:

    **a.** Personal property in the open; or

    **b.** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**13. Weight Of Snow, Ice Or Sleet**

But we will not pay for loss or damage to personal property outside of buildings or structures.

**14. Water Damage**

    **a.** Water Damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance, that is located on the described premises and contains water or steam.

However, Water Damage does not include:

    **(1)** Discharge or leakage from:

        **(a)** An Automatic Sprinkler System;

        **(b)** A sump or related equipment and parts, including overflow due to sump pump failure or excessive volume of water; or

        **(c)** Roof drains, gutters, downspouts or similar fixtures or equipment;

    **(2)** The cost to repair any defect that caused the loss or damage;

    **(3)** Loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; or

    **(4)** Loss or damage caused by or resulting from freezing, unless:

        **(a)** You do your best to maintain heat in the building or structure; or

        **(b)** You drain the equipment and shut off the water supply if the heat is not maintained.

    **b.** If coverage applies subject to **a.** above, and the building or structure containing the system or appliance is Covered Property, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or steam escapes. But we will not pay the cost to repair any defect that caused the loss or damage.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a. Ordinance Or Law**

The enforcement of any ordinance or law:

    **(1)** Regulating the construction, use or repair of any property; or

    **(2)** Requiring the tearing down of any property including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

    **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

    **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

    **b. Earth Movement**

    **(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

    **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

    **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply:

**1.** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.

**c.** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

But if mechanical breakdown results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**d.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.,** Ordinance Or Law;

**(b)** Paragraph **B.1.c.,** Governmental Action;

**(c)** Paragraph **B.1.d.,** Nuclear Hazard;

**(d)** Paragraph **B.1.e.,** Utility Services; and

**(e)** Paragraph **B.1.f.,** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**C. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in **C.1.** through **C.7.**

**1.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; all only as insured against in this Coverage Part;

**b.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**c.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**d.** Weight of people or personal property;

**e.** Weight of rain that collects on a roof;

**f.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation. However, if such collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.,** we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

This Additional Coverage – Collapse does not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in **2.a.**

**3.** This **Additional Coverage – Collapse** does **not** apply to:

    **a.** A building or any part of a building that is in danger of falling down or caving in;

    **b.** A part of a building that is standing, even if it has separated from another part of the building; or

    **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

    **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

    **b.** Awnings, gutters and downspouts;

    **c.** Yard fixtures;

    **d.** Outdoor swimming pools;

    **e.** Fences;

    **f.** Piers, wharves and docks;

    **g.** Beach or diving platforms or appurtenances;

    **h.** Retaining walls; and

    **i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.b.** through **2.f.** we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.f.** above;

    **b.** The personal property which collapses is inside a building; and

    **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **C.1.** through **C.7.**

**D. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **D.2.** and **D.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

    **a.** A Covered Cause of Loss other than fire or lightning; or

    **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

© ISO Properties, Inc., 2007

3. The coverage described under **D.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of Covered Causes of Loss (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **b.** of Covered Cause Of Loss **9.,** Sprinkler Leakage, or Paragraph **b.** of Covered Causes Of Loss **14.,** Water Damage, or under the Additional Coverage – Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form.

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**E. Limitation**

We will pay for loss of animals only if they are killed or their destruction is made necessary.

**F. Definitions**

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

 © ISO Properties, Inc., 2007 □

COMMERCIAL PROPERTY
CP 10 32 08 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion in Paragraph **B.** replaces the **Water** Exclusion in this Coverage Part or Policy.

**B. Water**

**1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**2.** Mudslide or mudflow;

**3.** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**4.** Water under the ground surface pressing on, or flowing or seeping through:

**a.** Foundations, walls, floors or paved surfaces;

**b.** Basements, whether paved or not; or

**c.** Doors, windows or other openings; or

**5.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **5.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**Policy No.:  CNA 4534974 14**
Previous Policy No.: 4534974-13

| **Named Insured Name and Address** | **Agency Name and Address** | 02520 |
|---|---|---|
| Chris Wilson | (806) 747-4422 | |
| dba Mr Wilson Plumbing | Cam Fannin Insurance Agency, Inc | |
| PO Box 65541 | PO Box 6745 | |
| Lubbock, TX 79464 | Lubbock, TX 79493-6745 | |